In the Matter of BRIGHTON SIXTH ST. CORP., Petitioner, against MAURICE FINKELSTEIN et al., Constituting the Temporary City Housing Rent Commission of the City of New York, Respondents.

Supreme Court, Special Term, Kings County, October 1, 1948.

*Edward Davis* for petitioner.

*Nathan W. Math* for respondents.

BELDOCK, J. This is a proceeding under article 78 of the Civil Practice Act to review and annul the determination of the temporary city housing rent commission which denied petitioner a certificate of eviction.

The record discloses that on September 22, 1942, petitioner, as landlord, and one Morris Wildman, as tenant, entered into a written lease of an apartment in premises 3096 Brighton 6th Street, Brooklyn. This letting for the period from October 15, 1942, to April 14, 1944, provided that " The demised premises and any part thereof shall be occupied only by Tenant and the members of the immediate family of Tenant, and as a strictly private dwelling apartment for no other purpose." Also contained therein was a provision prohibiting the tenant from assigning or underletting such demised premises without the prior written consent of the landlord. (Since the expiration date of the lease, a statutory tenancy has been in effect.)

Petitioner's application for the issuance of a certificate was made under Local Law No. 66 of 1947 of the City of New York (New York City Administrative Code, § U41–7.0, subd. c, par. [1]) and paragraph (1) of subdivision (a) of section 5 of article II of regulation II of the temporary city housing rent commission, on the ground that Morris Wildman was violating a substantial obligation of the terms of his tenancy, having allegedly sublet the premises to one Clare Lucas, the present occupant, without obtaining petitioner's written consent.

Resisting the application, Clare Lucas submitted an affidavit setting forth the following: that although the lease was executed

in the name of Morris Wildman, her former brother-in-law, the premises were rented jointly in September, 1942, to her, her sister and her sister's husband (Morris Wildman); that in the month of October, 1942, Wildman was inducted into the armed forces of the United States, at which time she and his wife remained in the premises; that several months later she too joined the army, as did Wildman's wife a short time thereafter; that during the time they were in the army, the apartment was maintained by her and her sister, and the rent therefor was paid by their father; that after the war, both returned to the apartment in which they made their home; that her sister subsequently divorced Wildman, remarried and thereafter moved out of the subject premises; that she, however, remained in the apartment and presently resides therein with her husband and two-year-old child of the marriage.

Petitioner denies the assertion that Clare Lucas began her occupancy on the date of the beginning of the term and alleges that she moved in several months later.

Confronted with the highly controverted dispute as to the precise time when the present occupant moved into the subject premises, the commission determined on the basis of all the evidence before it that Clare Lucas entered into the premises at the same time that Wildman took possession under his lease. It concluded, therefore, that Clare Lucas was originally a member of the immediate family unit and that her present occupancy is not in violation of the terms of the said lease. It held in addition that even if she commenced occupancy after the beginning of the tenancy, the knowledge of the superintendent of such occupancy and his acceptance of the rent with such knowledge amounted to an acquiescence therein and a waiver by petitioner of a breach, if any, of the obligations of the tenancy.

Based upon the above findings, the commission issued its order of denial. An application for a reconsideration was thereafter made, which was again denied.

Petitioner in this application to review asserts (a) that the commission erred in denying a certificate of eviction, (b) that no opportunity was afforded to it to refute the alleged opposition or to submit additional supporting proof, and (c) that no sworn facts were exhibited to it upon which the determination of the commission is allegedly based. I do not agree with any of these contentions.

In my view, there is sufficient evidence in the record to justify the commission's determination that the present occupant was

a member of the original family unit at the inception of the lease. I conclude that as such member Clare Lucas is entitled to possession, use and occupancy of the apartment, despite the removal of Wildman, the accredited tenant.

" Tenant " is defined in Local Law No. 66 (§ U41–7.0, subd. b, par. 5) as " A tenant, subtenant, lessee, sublessee, *or other person entitled to the possession or to the use or occupancy of any apartment* as herein defined." (Italics mine.) Whether or not Clare Lucas is a tenant in the conventional sense, in my opinion she is, within the quoted definition, a person " entitled to the possession or to the use or occupancy " of the apartment and, therefore, a " tenant " for the purposes of these proceedings for certificates of eviction. It is conceded that during the time petitioner did actually recognize Wildman as its tenant, Clare Lucas was also residing in the apartment. Admittedly, an apartment is hired not only for the tenant himself but also for his family unit. During the time that Wildman was the tenant, Clare Lucas was part of the family unit. Thus, as part of such unit she was a person " entitled to the possession or to the use or occupancy " of the apartment, within the intendment of the definition above quoted. (*Matter of Goodman* v. *Ross,* 274 App. Div. 811.) In that case the lessee and his wife vacated the apartment after the expiration of the term of a written lease, leaving in possession a daughter of the lessee, his son-in-law and the latter's child. Repudiating the landlord's claim that the daughter and son-in-law of the lessee were not tenants or otherwise entitled to possession of the apartment, the Appellate Division reversed on the law and facts an order of Special Term directing the commission to issue a certificate and held: " During the time that the accredited tenant was recognized as such by the respondents, the present occupants of the apartment were part of the family unit of the tenant, and were entitled to possession, use and occupancy of the apartment. In our opinion, the fact that the accredited tenant had moved from the apartment, leaving the remainder of the family unit in possession, did not render the latter the less entitled to such possession, use and occupancy." (See, also, *Rubin & Son* v. *Sackler,* 190 Misc. 1064 [App. Term. 1st Dept.].) In that case, the appellant was the tenant's grandson who commenced occupancy of the apartment with his grandmother prior to her last illness. Reversing a final order in favor of the landlord in proceedings for eviction of an alleged squatter, the court said (p. 1065): " The appellant was a member of the immediate family of the tenant and upon her decease he did

not become a squatter, any more than upon the death of the head of a family the rest of the family would be considered as squatters.''

Even if the finding by the commission that there has been no violation of the obligation of the tenancy be erroneous (with which finding, as above stated, I agree), it does not follow that the commission erred in denying the certificate. I conclude that there is sufficient basis for the commission's additional finding that if there was a breach, such breach was waived by petitioner. There is ample evidence in the record to justify the commission's determination that petitioner's superintendent knew of Clare Lucas' occupancy. His acceptance of the rent with such knowledge was an acquiescence therein and constituted a waiver so as to preclude petitioner from asserting the violation of the obligation of the tenancy. (*Levinax Realty Corp.* v. *Ross,* N. Y. L. J., March 9, 1948, p. 882, col. 5.)

If a violation of the tenancy be present at all in this case, at most it is purely technical, being one which does not subject petitioner's property to an unlawful use and does not cause it any genuine loss. The present occupant has been a resident of the apartment for approximately six years. The result of the commission's refusal to issue a certificate, in my opinion, tends to promote the spirit of the law and makes an apartment available as a home to one who needs it. There is not here present the usual situation in which a landlord, because of compelling necessity, seeks an apartment for his own personal use. On the contrary, petitioner is a corporation and were this occupant evicted, it would have to, perforce, rent to someone else.

A case of similar import is *Matter of Park East Land Corp.* v. *Finkelstein* (193 Misc. 783).* That case involved an apartment in a multiple dwelling owned by petitioner and leased to a person whose family consisted of himself, his wife and his son. As in the instant case, the lease embraced a provision that the apartment was to be used and occupied as a strictly private dwelling by the tenant and his immediate family. After the expiration of the term, the tenant, his wife and son remained in possession as statutory tenants under the existing emergency rent laws. Upon the death of the tenant, his widow remarried and moved elsewhere. Thereafter the daughter and son-in-law of the widow's new husband moved into the apartment and occupied it together with the son of the tenant. In considering the petition which sought to review and annul the determination

* Since reversed 274 App. Div. 982.

of the temporary city housing rent commission, Mr. Justice WALTER used the following language: "the requirement in Local Law No. 66 of 1947, that a landlord obtain a certificate from the temporary city housing rent commission before instituting a proceeding to evict a tenant upon the ground that he has violated a substantial obligation of his tenancy, must have been intended as some sort of limitation upon the landlord's right to evict whenever and merely because there has been such a violation. The intent must have been to vest in the commission a power to do something more than or something different from merely determining a narrow legal question of whether or not there was a violation from a strictly legal point of view; and where, as here, the claimed violation, if it exist at all, is purely technical and actually causes the landlord no real legitimate loss and does not subject his property to an essentially unlawful use, and the effect of the administrative agency's refusal of the certificate plainly tends to promote the policy of the law by making an apartment available as a home for people who need a home, I do not think the refusal is an excess of the administrative agency's power or so arbitrary or unreasonable that the courts should interfere."

Upon the record here presented, I hold that the determination of the commission in denying the application was neither arbitrary, capricious nor unreasonable. I conclude also that there is no merit to the other objections urged by petitioner.

The petition is dismissed.