VANDERLINDE *v.* BANKERS TRUST COMPANY OF
MUSKEGON.

1. Wills—Judgment—Res Judicata.
   Judgment admitting will to probate is *res judicata* of its validity
   as against the world (3 Comp. Laws 1929, § 15543).

2. Same—Judgment—Trusts.
   Judgment admitting will to probate did not prevent attack upon
   a trust agreement, a separate instrument, made three days be-
   fore the will was executed.

3. Trusts—Undue Influence—Ratification.
   Trust instrument induced by undue influence is merely voidable
   and may be ratified by grantor upon his restoration to freedom
   of action.

4. Same—Undue Influence—Curing Infirmity—Wills.
   Trust instrument alleged to have been procured through undue
   influence *held,* cured of infirmity by subsequent valid will,
   freely made by testator and incorporating trust agreement by
   reference, where effect of will was to ratify trust and appro-
   priate thereto balance of testator's property not theretofore
   legally conveyed.

5. Same—Finding of Court—Undue Influence.
   Finding of trial court that trust agreement, vesting trustee with
   substantially all of grantor's property but reserving the net
   income and some principal, was not induced by undue influence
   is affirmed on appeal.

6. Insane Persons—Mental Competency.
   Finding that wife of wealthy testator was not shown to have
   been incompetent *held,* supported by the facts.

7. Same—Agreements—Waiver.
   Agreements and waivers of rights by mental incompetents are
   nullities.

8. Wills—Waiver of Rights by Mentally Incompetent Wife—Election.

Waiver of rights in husband's property by mentally incompetent wife left her with right of election for one year after his death to take under his will, have dower, or take her share of his realty as an intestate estate (3 Comp. Laws 1929, § 13085, as amended by Act No. 242, Pub. Acts 1931, § 13086); and for one year after probate of the will to take under it or have her share of his personalty as an intestate estate (3 Comp. Laws 1929, §§ 15564, 15565).

9. Same—Election by Widow.

Under statutes requiring widow to make her election, she must make it within time prescribed or be deemed to have elected to take under the will (3 Comp. Laws 1929, § 13085, as amended by Act No. 242, Pub. Acts 1931, §§ 13086, 15564, 15565).

10. Conveyances—Trusts—Husband and Wife.

Conveyance of property to trustee by husband without his wife's signature is valid except as to dower, homestead and certain personal property exemptions.

11. Wills—Election by Widow—Incompetency.

A widow's right of election to take or not to take under her late husband's will is personal to her; is not assignable by her; ceases at her death, though she may have been mentally incompetent from the time election might first have been made until her death; is held in abeyance during her incompetency and may be exercised by her after her restoration to reason or during her incapacity by her guardian only upon authority of the court having charge of her (3 Comp. Laws 1929, § 13085, as amended by Act No. 242, Pub. Acts 1931, §§ 13086, 15564, 15565).

Appeal from Muskegon; Vanderwerp (John), J. Submitted January 22, 1935. (Docket No. 118, Calendar No. 38,149.) Decided March 5, 1935. Rehearing denied April 11, 1935.

Bill by Roy A. Vanderlinde and another against Bankers Trust Company of Muskegon, a Michigan corporation, and others to set aside a trust agreement, for the division of an estate, an accounting,

and other relief. Bill dismissed. Plaintiffs appeal. Affirmed.

*Alexis J. Rogoski,* for plaintiffs.

*Penny & Clark,* for defendants.

FEAD, J.   Nicholas Vanderlinde was a successful furniture merchant in Muskegon, · and amassed a fortune of over $200,000. He was twice married. Defendants Guy and Leslie Vanderlinde and Minnie Van Andel are issue of the first marriage. The other individual defendants are their children. Plaintiffs were born of the second marriage. Guy worked with his father until the furniture business was sold in 1931. Leslie has been a practicing physician since 1908 and is located at Milwaukee. Roy became a dentist in 1919, practiced in Muskegon for three years and moved to California, where he has since resided. When he left, there was some misunderstanding or ill feeling between him and his father. On petition of Roy, filed July 25, 1933, Earl was adjudged mentally incompetent and a guardian appointed for him. Mrs. Vanderlinde, the second, was a woman of strong character but in 1920 she suffered a stroke which affected her eyesight, the mobility of her face and control of her limbs. She died June 11, 1933. Mr. Vanderlinde had died November 10, 1931.

Nicholas Vanderlinde executed seven wills after 1920. In 1930 he was 72 years of age and evidently desired to put his house in order. March 31st he formed a corporation, to which he transferred all his property except personal effects and homestead. He created a trust for the benefit of himself and family and conveyed, or had issued, to the trustee substantially all of the corporate stock. Leslie ob-

jected to the arrangement. Attorneys were engaged, family conferences were held, and the situation was changed. Through amendment of the articles of the corporation, withdrawing property (and its final dissolution in May, 1932), the trust ultimately was rendered ineffective. Mr. Vanderlinde made wills on April 10th and April 30, 1930. May 5, 1930, Mrs. Vanderlinde made a will leaving any property she might have to Guy, Leslie and Minnie, reciting that it was an interlocking will with that of her husband, she would elect to take under his will in case of his prior death, and that she made no provision for her own children, Roy and Earl, because they were provided for by life insurance of her husband. Mr. Vanderlinde made another will December 18, 1930.

January 12, 1931, Mr. Vanderlinde executed a new trust agreement with the defendant Bankers Trust Company, to which he conveyed substantially all his property, reserving the net income and such amounts of principal as he desired to himself for life and making provision for his wife, children and grandchildren. To the agreement was appended the following, executed by Mrs. Vanderlinde:

"I, Minnie Vanderlinde, as the wife of said Nicholas G. Vanderlinde, having read the foregoing trust agreement and being familiar with its contents, do hereby consent to the same and accept the provisions therein made for me in lieu of any and all statutory or other rights which I might have in and to the property covered by said agreement at his decease, and I do hereby waive all such statutory and other rights in consideration of the provisions therein made for me."

January 15, 1931, Nicholas Vanderlinde executed his last will, the whole of which, except a clause ap-

pointing Bankers Trust Company as executor, and giving it power, was:

"Whereas, I have thereto on the 12th day of January, A. D. 1931, executed a certain trust agreement with the Bankers Trust Company of Muskegon and have conveyed to it certain property in trust for the benefit of myself and the certain beneficiaries named in said agreement.

"Now therefore, to the benefit that the aforementioned agreement and conveyance does not vest in the trustee thereunder full legal right at the time of my decease to any property or rights I may then have, I hereby give, devise and bequeath all the rest and residue of my estate, real, personal and mixed, wherever the same may be situated, which I may own or have the right to dispose of at the time of my decease, to the Bankers Trust Company of Muskegon as trustee, to be held, administered and disposed of under the trusts as provided in said agreement and any amendments thereto, and said trustee shall not be required to account therefor to the probate court of Muskegon or to any other person except as provided in said trust agreement."

December 9, 1931, Mrs. Vanderlinde filed petition in probate court for the probate of the will of her husband. Roy contested allowance of the will in probate court, for mental incompetency and undue influence, the court allowed the will February 9, 1932, Roy took appeal, and the order of allowance was affirmed by judgment of the circuit court, after verdict of a jury. No appeal was taken.

After the death of Mrs. Vanderlinde, Roy had a guardian appointed for Earl, and the present bill was filed August 5, 1933. Plaintiffs pray:

First. That the trust agreement of January 12, 1931, be declared void for undue influence practiced on Nicholas Vanderlinde by some of the defendants.

*Second.* That plaintiffs be decreed the share of their father's estate which they would have received had he died intestate.

*Third.* That the consent of Mrs. Vanderlinde to the trust agreement be declared void because she was mentally incompetent to execute it.

*Fourth.* That Mrs. Vanderlinde be decreed the owner of one-third of all her husband's estate and it devolve on plaintiffs as her heirs.

*Fifth.* That the trustee account and convey accordingly.

Defendants had decree dismissing the bill.

The judgment admitting the will of Mr. Vanderlinde to probate is *res judicata* of its validity as against the world. *Calhoun* v. *Cracknell,* 202 Mich. 430; *Thompson* v. *Thompson,* 229 Mich. 526; *Loesch* v. *First National Bank,* 249 Mich. 326; *Raseman* v. *Raseman,* 234 Mich. 237; 3 Comp. Laws 1929, § 15543. The judgment did not prevent attack upon the trust agreement, a separate instrument made three days before the will was executed. But if the trust agreement was induced by undue influence, it was merely voidable and, upon the grantor's restoration to freedom of action, could be ratified by him. *Cochran Timber Co.* v. *Fisher,* 190 Mich. 478 (4 A. L. R. 9). Any such infirmity in it was cured by the subsequent will, freely made by the testator and adjudicated valid because the effect of the will was to ratify the trust and appropriate and convey to it all the property of testator not before legally conveyed. Moreover, by reference the trust agreement was incorporated into and made part of the will. *In re Bresler's Estate,* 155 Mich. 567; *Jennings* v. *Reeson,* 200 Mich. 559; 68 C. J. p. 640; 80 A. L. R. 103, note. Also, we agree with the court in its finding that the trust agreement was not induced by undue influence.

Mrs. Vanderlinde's mental competency was the subject of much conflicting medical and lay testimony, discussion of which would greatly extend this opinion. Upon the facts we agree with the circuit court that she was not shown to have been incompetent. But, in the interest of brevity, we will discuss only the legal situation, upon the assumption that she was incompetent for years as claimed by plaintiffs.

In so doing, we also pass by the effect of the undisputed fact that she was never declared incompetent in her lifetime but was accepted by the probate court and all parties in the probate proceedings as *sui juris,* upon the right of plaintiffs to now raise the question.

Assuming her mental incompetency, all her agreements and waivers prior to her. husband's death were nullities. When her husband died, therefore, she had a right of election, for one year after his death, to take under his will, or to have dower, or take her share as of an intestate estate. 3 Comp. Laws 1929, §§ 13085 (amended by Act No. 242, Pub. Acts 1931), 13086; and, within one year from probate of the will to take under it, or take the share she would have taken had her husband died intestate, 3 Comp. Laws 1929, §§ 15564, 15565. Under both statutes the election to take otherwise must be within one year or the wife is deemed to have elected to take under the will.

Her signature to the trust agreement was not necessary to enable her husband to convey the estate, except as to dower, homestead and certain personal property exemptions. So her mental competency is not of importance in that connection. However, even had her mental condition affected the trust agreement, it would not affect the conveyance of the

property in trust by her husband's will, which was valid and binding upon her, subject to her right of election.

The right of election is personal to the wife and is not assignable by her. *In re Service's Estate,* 155 Mich. 179. On her death it does not pass to her representatives or heirs. 69 C. J. p. 1108. Where a wife is insane or incompetent, she does not lose the right of election but it may remain in abeyance until her restoration to competency. During her incompetency, election cannot be made by her guardian alone but may be made by him only upon authority of the court having charge of her. *In re Estate of Andrews,* 92 Mich. 449 (17 L. R. A. 296). Nor does the right of election pass to the representatives or heirs of the wife on her death, although she was insane from the time election first could have been made to the time she died. *Nordquist's Estate* v. *Sahlbom,* 114 Minn. 329 (131 N. W. 323); *Harding* v. *Harding,* 140 Ky. 277 (130 S. W. 1098, Ann. Cas. 1912 B, 526); *Sippel* v. *Wolff,* 333 Ill. 284 (164 N. E. 678); *Arnold's Estate,* 249 Pa. 348 (94 Atl. 1076); 69 C. J. pp. 1108, 1109; 74 A. L. R. 462, note.

Many States have statutes substantially identical with ours in providing for election by the wife. The decisions are uniform in holding the right is personal to her and ceases at her death. The only case we have found in which election was made after the death of the wife is *Ambrose* v. *Rugg,* 123 Ohio St. 433 (175 N. E. 691, 74 A. L. R. 449), in which it was held that on proceedings begun before her death equity retained jurisdiction to authorize an election after her death. But in no case discovered has an election for an incompetent wife been permitted by any one except the court, which is not her rep-

resentative but stands in her place. The reason is plain. Election by order of the court and by representatives or heirs would proceed upon different theories. In the former, the interests of the wife herself, but with consideration of rights of others, are the governing factors. In the latter, personal and selfish interests naturally predominate.

The logic of our statutes and decisions thereunder is in harmony with the authorities elsewhere and we hold that the death of a mentally incompetent wife terminates her right of election and it does not pass to her heirs.

Affirmed, with costs.

POTTER, C. J., and NELSON SHARPE, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ.. concurred.