### In Re Trust Estate of Major C. Houghton

[105 A2d 257]

February Term, 1954.

Present: **Sherburne, C. J., Jeffords, Adams and Chase, JJ., and Sylvester, Supr. J.**

Opinion Filed May 4, 1954.

*A. Luke Crispe,* for Ella B. Houghton's Guardian.

*Osmer C. Fitts, Paul N. Olson* and *James A. C. Stillman* for Vermont-Peoples National Bank, Successor Trustee.

**Adams, J.** This is a petition brought to the probate court for the district of Marlboro by the Vermont-Peoples National Bank, substitute under the will of Major C. Houghton, late of Brattleboro. It asks for a determination of the rights of Ella B. Houghton, the widow, as a life beneficiary in a trust set up by the will.

The judge of probate for the district of Marlboro disqualified herself and appointed the judge of probate for the district of Bennington to act in her place. A hearing was had on the petition, findings of fact were made and a decree entered. The case is here on exceptions of the bank as trustee to certain specific parts of the decree and also to the entire decree and on exceptions of the guardian of Ella B. Houghton to certain specific parts of the decree.

The findings show the following material facts: Major C. Houghton died testate on August 26, 1946. He named in his will as executors, his wife, Ella B. Houghton and the Vermont-Peoples National Bank of Brattleboro and they qualified and acted as such. Prior to his death, Houghton had been, for a period of at least ten years, president of the bank. The will contained the following provision: "I give, devise and bequeath to my wife, Ella B. Houghton, in trust, my entire estate for her use, benefit and welfare with the right to use so much of the principal and income as she may elect during the remainder of her life, and after her decease, whatever shall remain of my estate, if any, I give, devise and bequeath as follows:—" The will then distributed that remainder to named fraternal, religious and charitable institutions and also to named individuals.

On January 6, 1949, Mrs. Houghton filed in the probate court a writing signed by her, setting forth that by the will there was left to her in trust the entire estate for "her use, benefit and welfare"; that she declined to accept the trust imposed upon her by the will but not the benefits and privileges thereof and asked the court that she be relieved as trustee and that in her stead the Vermont-Peoples National Bank be appointed as trustee of said estate. The bank was ac-

cordingly appointed and qualified and has acted as such since then.

The bank as trustee has paid to Mrs. Houghton for her own use from income of the trust fund, $11,225.00 and from the principal $41,100.00 and there remains now in the corpus of the trust approximately $48,000.00. These payments have been made on requests of Mrs. Houghton personally or through her employee. In July 1953 a request was made to the trustees for funds for Mrs. Houghton to expend on the maintenance of real estate owned by her in Vernon, Vt., to replace or renew the water supply of said premises, an amount that would approximate or exceed $1,000.00. This request was accompanied by two reports from the state board of health and the water department to the effect that the water was contaminated. The bank did not authorize this payment and has made no payments to Mrs. Houghton or for her use since July 25, 1953. Following that request it brought the petition now under consideration.

On or about September 4, 1953, Mrs. Houghton filed in the probate court for the district of Marlboro her petition representing that she was over 70 years of age and that by reason of infirmity and physical disability she deemed herself unfitted for the prudent management of her affairs and requested that the court appoint Orrin B. Hughes as her guardian. He was accordingly appointed.

Mrs. Houghton owns a residence in Brattleboro and a residence in Vernon of the approximate aggregate value of $30,000.00. Both of these properties were in the Houghton family before Mr. Houghton's decease and during his lifetime both were used by him and Mrs. Houghton. According to the inventory of the guardian, Mrs. Houghton has personal property in her own name of approximately $23,000.00 and bank accounts derived wholly from sources of her own that stand in the joint names of herself and other persons of approximately $24,000.00. No claim is made that any of the property owned by Mrs. Houghton or bank accounts in her name and jointly are any part of the trust estate or in any way part of its proceeds.

The petition asks that the court adjudge and determine the rights of Mrs. Houghton, the life tenant, acting for herself, or through her guardian, to elect to invade the corpus of the trust for her "use, benefit and welfare" and whether before or after exhaustion of income or the exhaustion of principal or resources of her own. It is unnecessary for our purposes to set forth the decree of the probate court verbatim. It provides in substance that Mrs. Houghton by her declination to act as trustee did not waive or lose the right to elect to invade the corpus of the trust for her use, benefit and welfare; that such right was personal to her and did not pass to the bank as substitute trustee; that the net income of the trust be paid to Mrs. Houghton periodically or to her guardian for her use, benefit and welfare; that the right to elect to invade the corpus does not pass to the guardian until such time as the property of Mrs. Houghton has been exhausted and the income of the trust estate is insufficient to properly maintain and support her in the manner to which she was accustomed to live during her married life; that in the event the guardianship is terminated the right to invade the corpus would again be available to Mrs. Houghton without prior exhaustion of her personal income or principal and that when the right to elect to invade the corpus of the trust is available to Mrs. Houghton such invasion must be reasonable.

The first question for consideration is: Is the right to elect to use the principal and income of the trust personal to Mrs. Houghton or does it attach to the office of trustee so that when she declined to serve as trustee such right passed to the bank as substitute trustee?

In construing a will the first and chief object is to ascertain the intention of the testator, from the language used, since so far as it may be legally carried out, that governs. To determine such intention, the court is to take the will by its four corners, consider it in all its parts, and give effect to its language read in the relation of the parties concerned and the circumstances of its execution. The court is to place itself in the shoes of the testator, and his language is to be construed and interpreted in the light of the state of facts with which he

was surrounded and his relations to the various objects of his bounty. *Tuttle* v. *Tuttle*, 112 Vt 271, 278, 23 A2d 523.

 It appears to be well settled that when a trustee's discretionary power to invade the principal for, or to determine the amount of income payable to, a trust beneficiary are conferred in such a manner as to be personal to such trustee, they do not survive to and may not be exercised by a successor or substitute trustee, but that the rule is otherwise when the powers are related to the administration of the trust, and are conferred *ex officio*. Practically, the question reduces itself to determining whether such powers are in point of fact personal or *ex officio*, and this, at least in the absence of statute, depends upon the intention of the testator or settlor, to be gathered from the terms of the instrument creating the trust and from the surrounding circumstances. Anno., 126 ALR 932; *In Re Estate of Boutwell*, 112 Vt 159, 166, 22 A2d 157. Unless the instrument creating a power provides otherwise, and in the absence of statute, when a power is granted to a trustee, the execution of which is dependent on his judgment or discretion and which is granted by reason of personal confidence reposed in him by the creator thereof, such a power does not survive the original trustee and cannot be exercised by a substitute trustee. 21 RCL §20 p 789. The general rule is that a purely personal or confidential power cannot be exercised by a substitute or successor trustee. 54 Am Jur., Trusts §298 p 236. There are cases in which the court has found that the settlor intended that the discretionary powers conferred upon the trustee should be exercised only by him personally and should not be exercised by a successor trustee. 2 Scott on Trusts, §196 p 1063.

The case of *In Re Robinson's Will*, 101 Vt 464, 144 A 457, 75 ALR 59, is analogous to the instant case and quite in point. In that case, the will bequeathed the residue of the testatrix's property to Carroll A. Davis, "to be used for his own personal benefit in so far as he requires it" and if there should be any left after his death, the residue was to be held in trust by the trustees of the Orleans County Memorial Hospital Association. This Court held at page 469 that Davis took a life estate; that it was apparent the testatrix intended

234

to make Davis the primary object of her bounty; that certain contingencies might arise that would enable him to entirely defeat the attempt to benefit the hospital; that Davis took what he requires; the rest goes to the hospital; that Davis must assert his rights during his lifetime in order to make them complete and that "It makes no practical difference with his situation whether his interest under the will is technically an estate or a power, or both. It is a right, vested and available though it expires at his decease."

The probate court at the time the estate was settled appointed a trustee to handle the property and this Court at page 471 held that an appointment was proper as "The testatrix might have so given it, that Davis would be entitled to its possession and management but she did not."

In the instant case the testator did so by bequeathing the property to Mrs. Houghton in trust, thereby in effect designating her as trustee. He thus made sure that she did not take an absolute estate. As trustee she was entitled to the possession and management of the trust estate. When she declined to serve as trustee she relinquished that right only and it passed to the bank as substitute trustee.

In the Robinson case in discussing the rights of Davis, this Court at page 470, omitting citations, said:

> "We hold that it was the intention of the testatrix to give Davis a pretty free hand in the use and consumption of her estate. To accomplish this, she used the word 'requires' in the sense of *demands*. The clause in question means just what it would if it read, *in so far as he calls for it, or in so far as he desires to make use of it*. Thus read it confers upon Davis a wide but not unlimited discretion. The property can be used only for his 'personal benefit'. This does not limit him to so much as is necessary for his support. The term 'benefit' is much broader than the term 'support'. Indeed it is so comprehensive that in *Stowell* v. *Hastings, supra*, [59 Vt 494] it was said by this Court that the word 'benefit' and its synonyms 'mean any purpose to which the absolute owner of property can devote it.' Whatever may be said of this definition as applied to

that case, it is too broad to fit this one. Here the power to consume the property is not unlimited. What Davis uses up must be expended for his benefit. The hospital takes a vested interest in whatever may remain at his death. How far Davis may go in exhausting the property will depend upon a variety of circumstances which it is impossible to anticipate. It is enough here to say that he is not obliged to restrict himself to his present scale of living, or to resort to his own or his wife's industry or resources. He cannot squander the property to keep it away from the hospital; he cannot give it or will it away. In his calls upon the estate he must act reasonably and in good faith toward the hospital."

■ There the key word was "requires". Here it is "elect". The latter has been held to have various meanings; one is "choose"; another is "decide". 28 CJS 1052. The testator by the use of the word "elect", meaning "choose" gave Mrs. Houghton a personal choice to call upon the trust property for the purposes set forth in the will.

In the Robinson will case such right remained personal to Davis, the life beneficiary, although the probate court appointed a trustee. That case is controlling here. It makes no difference who is the trustee, the right to "elect" how much of the principal and income of the trust property she will use "for her use, benefit and welfare" remains in Mrs. Houghton while she lives.

The bank relies upon the case of *In Re Estate of Boutwell*, 112 Vt 159, 22 A2d 157. From what has been said it is apparent that the case is distinguishable and is not in point. On the facts in that case it was held that the discretionary power of the trustee was *ex officio*. It also relies upon V. S. 47, §§3121 and 3122. These sections were relied on in the Boutwell case and there it was pointed out that the discretion and authority of the trustee relative to the matters under consideration came to it by authority of the will so the statute was not material. That is the situation here.

Is Mrs. Houghton obliged to resort to her own property and resources, either income or principal, or both, before electing to call upon the trust property?

■ In the Robinson Will case, as we have seen, the words used were, "to be used for his own personal benefit so far as he requires it." There this Court said that Davis, "was not obliged to resort to his own or his wife's industry or resources." The reason for so holding here is more cogent than in that case. Here the beneficiary of the testator's bounty is his widow, whom he named in such a manner that she was entitled to the possession and management of the trust property and added to that her right to use for her benefit and welfare so much of the principal and income as she might elect. A surviving spouse is the favorite of the law and the provisions of a husband's will for the benefit of the wife should be construed liberally in her favor. *Phillips* v. *Northfield Trust Co.*, 107 Vt 243, 246, 179 A 154; *In Re Estate of Leonard*, 115 Vt 440, 444, 63 A2d 179.

In the latter case, the will set up a trust fund and directed payment of income to the wife during her life and further provided that if the income was not sufficient for the comfort of the wife in sickness and in health, the trustee was authorized to use so much of the principal as might be necessary for that purpose. This Court, speaking through Mr. Justice Cleary, distinguished various cases and pointed out that need of the widow was not the controlling factor in the will but rather insufficiency of income and it was held, at pages 444-445, that the judgment below ordering the trustee to pay the income and so much of the principal of the trust as necessary for the comfortable support and care of the widow without regard to her ability to make provision for herself from her own property was proper. See also *Rezzemini* v. *Brooks*, 236 NY 184, 140 NE 237.

The bank claims in its brief that because the words for the "use, benefit and welfare" are used in the instant case, the right to use the principal is more limited than where the word used is only "benefit" as in the Robinson Will case. It says that because "welfare" is used other property and resources of the

widow must be taken into consideration before resort can be had to the trust estate. We do not agree.

In *Lord* v. *Roberts*, 84 NH 517, 153 A 1, 2, property was devised for life with the right of disposition of any part or whole "that he may deem necessary or advisable for his maintenance, comfort or welfare." The court said that "comfort is more than maintenance and welfare is more than comfort" and "Whatever he thought would give him comfort and favor his welfare was authorized so long as he acted in good faith."

*In Re Walsh's Will,* 193 Misc 785, 85 NYS 2d 207, the entire estate was left to the widow for life with the right to not only use the income but "so much of the principal as may be necessary for her maintenance and welfare." This was construed as conferring upon the widow authority to determine the amount of principal that might be required for her maintenance and welfare from time to time, without being required to establish that her financial circumstances justified the invasion. *Rezzemini* v. *Brooks, supra,* was mentioned and followed.

The question in the instant case is: "Does the will contemplate a gift of the property, both income and principal for the use, benefit and welfare of the widow during her life? We think it does. Income and principal are not distinguished. Nothing is said about need or necessity. The intention of the testator was to provide for his widow and to consummate that purpose he made a gift of the property for her use, benefit and welfare as she might elect during her life. Further, it may be noted that the testator, after establishing the trust for his wife, in distributing the remainder significantly used the qualifying words "if any".

We hold that Mrs. Houghton is not required to use her own property, either income or principal, before electing to use the income and principal of the trust for the purposes set forth in the will. This right must, however, be exercised reasonably, fairly, honestly and in good faith toward the beneficiaries of the remainder. She must not squander the estate or do anything else merely to keep the property or any part of it from those beneficiaries. It is the function of the trustee

to see that the demands of Mrs. Houghton do not exceed those limits.

The foregoing are the general principles that are to be applied in the administration of the trust and the widow's rights in the trust property. There is a specific question posed here in the application of those principles, namely: Shall the trustee grant the request of Mrs. Houghton for funds to expend on the maintenance of real estate owned by her in Vernon to replace or renew the water supply of the premises, a sum that will approximate or exceed $1,000.00?

The findings show that the Vernon property is a farm and residence; that it and the residence in Brattleboro were in the Houghton family before the death of the testator and were both used by him and Mrs. Houghton during his lifetime and that when the request was made two reports from the state board of health and the water department showed that the water supply is contaminated. Certainly, a proper and uncontaminated water supply is essential to property used as a farm and residence. We hold that on the facts found expending an amount necessary and proper for replacing or renewing the water supply comes within the terms of trust "for the use, benefit and welfare" of Mrs. Houghton.

The remaining question for consideration is: How are the rights of Mrs. Houghton affected by the guardianship?

In *Jones* v. *Clyman*, 193 Iowa 1248, 1255, 188 NW 954, 957, a widow by her husband's will received a life estate with broad powers of disposition. She later was adjudged insane and a guardian appointed. The court in affirming the right of the guardian to sell the real estate in her behalf said:

> "It was the clear intent of the deceased to subject his estate, in the first instance, to the support and maintenance of his wife and children, and to that end he added to the widow's life estate a liberal power and discretion to sell and dispose of the property for that purpose, and when the widow became insane and incompetent to exercise that power in her own behalf it cannot be doubted that the Court, through a properly qualified guardian, proceeding in the manner prescribed by statute, could and should direct such disposition

of the property as would best accomplish the testator's purpose."

To the same effect is *Jacques* v. *Swallow*, 77 RI 517, 78 A2d 4. In fact, in that case, the court in its opinion, quoted the foregoing excerpt from the Clyman case.

V. S. 47, §3335 provides, "A guardian shall manage the estate of his ward frugally and without waste and in a manner most beneficial to the ward and out of the estate of his ward shall provide for the maintenance of the ward and family according to his condition and property."

■ Letters of guardianship create a trust coupled with an interest. *Pepper* v. *Stone*, 10 Vt 427, 430; *Clark & Freeman* v. *Patterson*, 58 Vt 676, 681, 5 A 564. In the Robinson Will case, supra, 101 Vt at page 469, 144 A 458, this Court in discussing the right of Davis to use the trust property for his own personal benefit "in so far as he requires it" said, "It is a right, vested and available, though it expires at his decease."

Here, the decree suspends the right of the widow to elect to use the corpus of the trust property for her "use, benefit and welfare" while she is under guardianship, until such time as her own property has been exhausted and the income of the trust property is insufficient. The trust property was a gift to her for the purpose set forth in the will and it was the intention of the testator to make it so available at her election. It was a vested property right and available when and as she elected to make use of it, both as to income and principal. According to the present decree and while she continues under guardianship, even her own residence would have to be converted into money and exhausted before the guardian could elect to call upon the corpus of the trust for her "use, benefit and welfare." The primary intent and purpose of the testator is thereby nullified and defeated. We hold that the right of election of Mrs. Houghton inured to the guardian upon his appointment, to be exercised by him in accordance with the terms of the will and with his legal duties as guardian.

We have disposed of all questions raised by the exceptions of both parties to the decree. *Exceptions of both the Vermont-Peoples National Bank, Trustee and of Orrin B. Hughes, Guard-*

*ian of Ella B. Houghton are sustained. Decree reversed and cause remanded to the probate court for the district of Marlboro for further proceedings in accordance with the views expressed in this opinion. To be certified. Neither party to recover its costs in this Court.*