TOLEDO TRUST COMPANY, TRUSTEE, APPELLEE, *v.* NATIONAL BANK OF DETROIT, APPELLANT; MURTAGH ET AL., APPELLEES.

[Cite as Toledo Trust Co. v. National Bank of Detroit (1976), 50 Ohio App. 2d 147.]

(No. 7962—Decided February 13, 1976.)

*Messrs. Marshall, Melhorn, Bloch & Belt*, for appellee.

*Messrs. Spengler, Nathanson, Heyman, McCarthy & Durfee, Mr. Andrew E. Anderson, Messrs. Miller, Canfield, Paddock & Stone* and *Mr. Peter P. Thurber*, for appellant.

*Messrs. Robison, Curphey & O'Connel*, for appellees James Murtagh et al.

WILEY, J.   This case involves an appeal from a final judgment in the Court of Common Pleas of Lucas County, in an action for a declaratory judgment, brought by the Toledo Trust Company as trustee of an *inter vivos* trust created by James Gerity of Adrian, Michigan.   The action was brought to determine the validity and/or legal effect of the purported exercise of a power of appointment by defendant National Bank of Detroit, the appellant herein, as guardian of Virginia B. Gerity, incompetent.   Virginia B. Gerity was granted the power of appointment under the terms of the *inter vivos* trust agreement.   By a written decision entered April 14, 1975, and by an order pertaining to such decision, entered April 16, 1975, and by a judgment entry amending such decision, entered April 25, 1975, the trial court determined that the instrument executed by the defendant National Bank of Detroit and delivered to the plaintiff, purporting to exercise the power of appointment, was invalid and of no effect.   The judgment of the trial court further stated that the plaintiff should proceed to administer its trust in compliance with the terms and conditions therein and that the plaintiff pay the costs of the action.   It is from this judgment that the appeal was taken.

The defendants in the action are the National Bank of Detroit, as guardian of the person and estate of Virginia B. Gerity and as executor of the estate of Virginia B. Gerity, deceased, and all persons named or described in the Trust Agreement having any interest in the trust property in the event that a certain general power of appointment granted to Virginia Gerity  by the terms of the trust agreement was not exercised.

The findings of fact made by the trial court were helpful to this court and included the following: James Gerity, Jr., and Virginia B. Gerity were married for forty-six years

and had no children. They resided in Adrian, Lenawee County, Michigan. By a trust agreement dated February 5, 1971, James Gerity, Jr., established an *inter vivos* revocable trust naming the Toledo Trust Company as trustee. The trust agreement provided that upon Gerity's death, the trust *corpus* should be divided into two parts: The first was for the benefit of his wife, Virginia B. Gerity, referred to in the trust agreement as "Trust for Donor's Wife" (Marital Trust), and the second, entitled "Residuary Trust," was for the benefit of named beneficiaries other than his wife. Under the terms of the trust agreement, Virginia B. Gerity was given a lifetime, personal power of appointment as well as a general testamentary power of appointment, both vesting as of the date of James Gerity's death, over that portion of the trust designated "Trust for Donor's Wife."

James Gerity, Jr., died November 26, 1973. The domiciliary administration of his estate, with the Ann Arbor Trust Company as administrator, was commenced in the Lenawee County of Michigan Probate Court in December 1973. The ancillary administration with the Toledo Trust Company as ancillary administrator is pending in the Probate Division of the Lucas County Common Pleas Court.

Under the terms of the will of James Gerity, Jr., the residue of his estate was bequeathed to the Toledo Trust Company as trustee, to be divided between the marital and residuary trusts. The marital trust provided that in the event Virginia B. Gerity survived James Gerity, Jr., but failed to exercise her personal power of appointment either during her lifetime or by her will, or to use up the property, that it was to go, at her death, to the beneficiaries named by James Gerity, Jr. In such event, the trust made provision for the payment of federal estate taxes caused by the inclusion of the value of the power of appointment to her estate. The balance of the trust assets constituting the residuary trusts were to be held for the benefit of, or distributed to, the same named beneficiaries of James Gerity, Jr. The trust agreement also provided that if Virginia should predecease James, Virginia's three nieces and a nephew should receive $100,000 each; since Virginia sur-

vived James, they are not entitled to receive this sum.

On the same day that he executed his trust, February 5, 1971, James Gerity, Jr., executed his will under which the bulk of his estate was bequeathed to the trustee. Virginia B. Gerity executed her will in 1958, which bequeathed her interest in the residence and household furnishings to her husband, James, and the residue of her estate to her nephew and three nieces.

On November 15, 1973, eleven days prior to his death, when James Gerity was confined in St. Vincent's Hospital, Toledo, Ohio, substantially all of his securities were brought from Adrian to Toledo, Ohio.

At the time of James Gerity's death, and for some months prior thereto, Virginia B. Gerity was incompetent. She had sustained a severe cardiac seizure or arrest in March of 1973 and her condition steadily worsened. At the request of the niece of Virginia B. Gerity, Margaret Longthorne, the National Bank of Detroit was appointed Guardian of the person and estate of Virginia B. Gerity by the Probate Court of Lenawee County, Michigan, on December 26, 1973.

On January 14, 1974, in an *ex parte* proceeding in the Probate Court of Lenawee County, Michigan, upon a petition filed by the guardian, First National Bank of Detroit, the Probate Court entered an order granting the guardian's request for interim authority to exercise the power of appointment over the assets comprising the marital trust, reserving in the court authority to ratify, modify, or nullify the acts of the guardian in its efforts to exercise the personal power of appointment.

Subsequently, on January 30, 1974, and February 20, 1974, hearings were held in the Probate Court of Lenawee County on the issue of whether or not the acts of the guardian in its efforts to exercise the personal power of appointment should be ratified, modified or nullified. At the request of counsel, following the hearing on February 20, 1974, the court reserved ruling on the issues before it and continued the case to March 6, 1974, to allow counsel to file briefs. Briefs were filed on or about March 6, 1974;

however, between the hearing on February 20, 1974, and April 15, 1974, the date of the court's final order, Virginia B. Gerity, on February 24, 1974, died. The final order of the Probate Court of Lenawee County, on April 15, 1974, purported to ratify the guardian's exercise of the power of appointment in favor of the guardianship estate of Virginia B. Gerity *nunc pro tunc*.

In addition to the above facts, the transcript of proceedings indicates that at the time of the death of the donor and prior thereto, from the date of the execution of the trust, the funding of the trust consisted of a deposit of money which was invested in a $25 savings bond, leaving a balance of $6.25 in cash. No other assets were conveyed, distributed or held by the trustee at any time and the trust had not been funded by a distribution from the donor's estate at the time of the hearing on the declaratory judgment proceedings in the trial court, beginning December 11, 1974.

The transcript of proceedings further indicates the donor, Mr. Gerity, had extensive business relationships with the Toledo Trust Company and had indicated that he had a strong desire to have his estate administered in Toledo and that Mr. Robert J. Kirk, a longtime financial advisor and accountant, had brought securities representing a substantial portion of Mr. Gerity's estate from Adrian, Michigan, to Toledo shortly before the death of Mr. Gerity, who had been hospitalized in Toledo. Mr. Gerity died in Toledo on November 26, 1973.[1]

---

[1]A chronology of important events follows:

November 26, 1973. Death of James Gerity.

December 26, 1973. National Bank of Detroit is appointed guardian for Virginia Gerity, being found incompetent by Probate Court of Lenawee County, Michigan.

January 14, 1974. National Bank of Detroit, in an *ex parte* proceeding, in the Probate Court of Lenawee County, Michigan, was granted, upon request, authority to exercise the power of appointment over the assets comprising the marital trust, reserving in the court authority to ratify, modify, or nullify the acts of the guardian in its efforts to exercise the personal power of appointment.

January 14, 1974. National Bank of Detroit served an instrument

Article III(1)(a) of the trust agreement provided that if, upon the donor's death, his wife, Virginia, was then surviving, a certain portion of the trust assets would be allocated to a separate "trust for donor's wife." This was to be distributed as follows:

"(i) All of the income (which may be more, but in no event shall be less than the income determined in accordance with the requirements of the applicable sections of the Internal Revenue Code and the rules and regulations issued pursuant thereto entitling a decedent's estate to a marital deduction) shall be distributed to Donor's wife annually or at more frequent intervals. In addition thereto the Trustee may from time to time in its discretion pay to her or apply to her use such part of the principal as it deems necessary, advisable or expedient for her care, comfort, support or best interests.

"(ii) Donor's said wife shall have the right and power, at any time and from time to time, by means of a written instrument signed by her and delivered to the Trustee during her life, or at her death by provision in her will which expressly refers to her power of appointment hereunder, to appoint all or any part of the principal to such one or more person or persons (including herself and/or her estate), in such shares and amounts and in such manner, as she may designate.

---

exercising the power of appointment upon the Toledo Trust Co., trustee, in Toledo, Ohio.

January 29, 1974. Toledo Trust Co. filed its complaint in this action for a declaratory judgment, advice and instructions in the Lucas County Court of Common Pleas.

January 30 and February 20, 1974. *Ex parte* hearings on guardian's petition in the Probate Court of Lenawee County, Michigan.

February 24, 1974. Virginia Gerity died.

April 4, 1974. Findings by the Probate Court of Lenawee County that the guardian could exercise Virginia Gerity's power of appointment stated in the trust.

April 15, 1974. A final order by the Probate Court of Lenawee County, Michigan, ratifying the guardian's exercise of power of appointment, *nunc pro tunc.*

May 8, 1974. Amended and Supplemented Complaint filed by Toledo Trust Co. in Lucas County, Ohio.

, "(iii) To whatever extent Donor's wife shall fail effectively to appoint such principal, it shall be upon her death, be distributed as follows * * *."

The trust agreement, at this point, provided under sub-section (a), of section (iii), for payment by the trustee to the executor or the administrator of the estate of the donor's wife certain sums with reference to federal estate taxes. It further provided for the distribution of the remainder of the principal to the heirs of the donor named as defendants herein.

Five separate assignments of error were set forth in appellant's brief, to wit:

"I. The Trial Court erred in holding that the duly appointed Guardian of Virginia B. Gerity acting under the express authority of the Probate Court appointing it did not have the legal right to exercise its ward's power of appointment.

"II. The Trial Court erred in holding that the Final Order of the Probate Court of Lenawee County, Michigan, was not entitled to full faith and credit under Article IV Section 1 of the Constitution of the United States.

"III. The Trial Court erred in holding that the Probate Court of Lenawee County, Michigan, lacked jurisdiction to decree the effectiveness of the exercise of the power of appointment by a guardian duly appointed by it.

"IV. The Trial Court erred in holding that the Probate Court lacked jurisdiction after Virginia Gerity's death to ratify its earlier interlocutory order authorizing exercise of the power of appointment by her guardian.

"V. The Trial Court erred in holding that the instrument exercising Virginia Gerity's power of appointment was not executed as required by the trust agreement creating said power."

The Toledo Trust Co. states that the assignments of error stated by the appellant raised three essential issues for determination on appeal:

"1. Whether the findings and orders of the Lenawee County court, in the proceeding there brought by the Guardian *ex parte,* are binding on the Lucas County Court

of Common Pleas and on all of the parties in this proceeding, and are thus conclusive of the questions on which the Trustee here sought advice and instructions concerning the validity and effect of the Guardian's purported exercise of the power of appointment?

"2. Whether, as conferred and limited by the *terms* of the Trust Agreement, the power of appointment granted by the donor to his wife, over the principal of certain trust assets, can be construed as capable of exercise 'for' her and 'on her behalf' by a guardian (she having become incompetent since the trust was established), where the donor had in the Trust Agreement specifically given his Trustee a power and discretion, exercisable in circumstances which would include the event of his wife's incompetency, from time to time to pay to her or apply to her use such part of the principal as the *Trustee* should deem necessary, advisable or expedient for her care, comfort, support or best interests?

"3. Whether a general power of appointment is capable of exercise by a guardian of the incompetent donee of the power, or by a court appointing such guardian, where the manner of exercise is to appoint the property to the guardianship estate, and the purpose of the exercise is not to provide for the incompetent's own care, comfort or support during her remaining lifetime (her death being considered imminent), but to augment her anticipated *probate* estate whose prospective beneficiaries are different from the successors designated by the donor of the power to take in the event the power were not exercised?"

The appellant, likewise, agrees that although there are five assignments of error, the appeal involves two basic legal issues:

"A. Can the guardian of an incompetent acting with express authority of the Probate Court appointing it exercise its ward's general power of appointment?"

"B. Is the Judgment of the Michigan Court entitled to Full Faith and Credit under the Constitution of the United States?"

We consider first the question of whether the judgment

of the Michigan court is entitled to full faith and credit under the Constitution of the United States. The judgment of the Michigan court as to the incompetency of the donee is conclusive as to all persons whether or not they were parties to the adjudication proceeding.

As to the exercise of the power of appointment, the Probate Court in the state of Michigan stated: "The Court feels that petitioner's brief and reply amply established that the validity of the guardian's exercise of the power of appointment probably must be determined by Ohio law, but in either Michigan or Ohio such power exists only with the approval of the Probate Court * * *." We concur in this statement only to the extent that Ohio law must apply.

The donor indicated his intention that the trust be administered in Ohio and the most significant contacts with relation to the trust and the trust assets were in Ohio, as indicated by the following: The donor executed the trust in Toledo, and the trustee was an Ohio corporation; his business interests were mainly in Toledo; the unrefuted testimony of his long time financial advisor and accountant was that the donor had a strong desire that his estate be administered in Toledo. 2 Restatement, Conflict of Laws 2d, Section 270 (1971), states: "An inter vivos trust of interest in movables is valid if valid (a) under the local law of the state designated by the settlor to govern the validity of the trust, provided that this state has a substantial relation to the trust and that the application of its law does not violate a strong public policy of the state with which, as to the matter at issue, the trust has its most significant relationship under the principles stated in Sec. 6, or * * *."[a] For an early statement of this legal principle by a recognized legal authority, we quote:

"The legal consequences of the exercise of a power of attorney are governed by the law of the state of exercise of the power." 2 Beale, Conflict of Laws, Section 283.1 (1935). See, also, 9 Ohio Jurisprudence 2d 730, Conflict of Laws,

---

[a] Section 6 refers to the choice-of-law principles.

Sections 62, 63, 64, 65, indicating certain tests for the choice of law, such as the place where the contract was made, the place of its performance, and the intention of the parties. Cf. also Leflar, American Conflicts of Law, Chapter 10, Sections 95, 96, and Chapter 15, Sections 188, 191, 192 and 193.

The comments under Section 270, Restatement, Conflict of Laws 2d, *supra,* refer to general principles and the law designated by the settlor to govern the validity of the trust and other matters. Comment "f," concerning powers of appointment, states: "The law which determines the validity of an inter vivos trust under the rule of this Section likewise determines the validity of a power, contained therein, to appoint interests in movables. * * * The scope of the power is a matter of interpretation or construction and as to construction is determined by application of the rule of Section 268." See, also, the Reporter's note following Section 270.

Specifically, as to the power of appointment provided in the trust agreement, we call attention to the provisions in 5 Scott, Trusts, Section 629 (3d ed. 1967), and those following: "So also, if a trust of movables is created inter vivos, the scope of the power of appointment conferred thereby is determined by the law of the state governing the construction of the trust instrument rather than that of the donee's domicile." (Section 631.) Also, see Sections 632, 633, 634 and 635.

The judgment of the Michigan Court as to the guardianship itself was entitled to full faith and credit under the Constitution of the United States. It was not so entitled as to the effectiveness of the exercise of the power of appointment. A case in point is *In re Langley's Settlement Trusts* (1961), 1 W. L. R. 41 (also discussed in 5 Scott, *supra,* Section 645). Cf. *Hanson* v. *Denckla* (1958), 357 U. S. 235.

A judgment is entitled to full faith and credit where the court has jurisdiction of the subject matter and the person who is a party and those claiming under or through such party. The trustee was not a party in the Michigan proceedings. The takers-in-default of the exercise of the power had a remainder interest in the appointive proper-

ty. *Central Trust Co.* v. *Watt* (1941), 139 Ohio St. 50. They were not parties. See 9 Ohio Jurisprudence 2d 677, Conflict of Laws, Section 20, and notes 10, 11, 18 and 19.

The appellant cites *Howells* v. *Limbeck* (1961), 172 Ohio St. 297, to support its full faith and credit argument as to the Michigan judgment. This case is distinguishable on the facts for two reasons. First, the Florida judgment that the illegitimate son of the decedent was the sole heir of his father and entitled to receive his father's estate wherever situate was actually concurred in by a choice-of-law rule in Ohio. Secondly, proceedings in Ohio established that this son was recognized, by an affidavit of the father, as the father's heir and under Ohio law was entitled to inherit the estate. Although, paragraph three of the syllabus states that an Ohio court is "not in error" in "according full faith and credit" to a Florida decree, the Ohio court did not decide that it was bound by a constitutional obligation to give full faith and credit to the Florida judgment purporting to adjudicate rights of persons in Ohio who were not parties in the Florida proceedings. See the concurring opinion of Justice Taft, at page 301.

Restatement, Judgments (1942), Section 93, indicates, in part, that a person who is not a party or privy to a party to an action in which a valid judgment other than a judgment *in rem* is rendered is not bound by an adjudication upon any matter decided in the action. See *Rousculp* v. *Rousculp* (1968), 17 Ohio App. 2d 101; cf. *Litsinger Sign Co.* v. *American Sign Co.* (1967), 11 Ohio St. 2d 1.

In summary, the Probate Court of Lenawee County, Michigan, in an ex parte proceeding, authorized the guardian, acting in its discretion, for the best interests of its ward, to exercise a power of appointment granted to the ward. The power of appointment was granted to the donee by the terms of a certain *inter vivos* trust executed in Lucas County, Ohio, and to be administered in Ohio by an Ohio corporation as trustee. This court concludes that the Michigan judgment is not determinative of the rights and duties of the trustee nor of the rights of the takers-in-default, none of whom were parties in the Michigan court proceed-

ings. Such Michigan judgment is not entitled to full faith and credit under the Constitution of the United States.

Having reached this determination, we proceed to consider whether or not the power of appointment exercised by the guardian appointed in the state of Michigan complied with the terms of the trust agreement in regard to the exercise of the power of appointment by the donee. For the reasons hereinafter stated, we conclude that the power of appointment was not exercised within the terms of the trust agreement.

The precise question presented in this case is one of first impression. Judge Franklin, the trial judge, in his well-reasoned opinion began his analysis of the question in these words:

"The Guardian's claim is solely pursuant to the Trust Agreement, and in virtue of the general power of appointment granted by the Trust Agreement. The terms of the Agreement define and govern the scope and limits of the power—who may exercise it, when and how, and for whose benefit. So far as these matters are expressly described in the Trust Agreement, the description is of acts to be done by Virginia B. Gerity personally—by 'an instrument signed by her and delivered to the Trustee during her life,' or 'by provision in her will which expressly refers to her power of appointment hereunder.' Nothing is said concerning any exercise of the power by the Guardian or other fiduciary acting in Virginia B. Gerity's place.

"Thus, if the power of appointment as conferred by the Trust Agreement were held capable of exercise by a Guardian, then the Trust Agreement must be construed to provide for that by implication. If the Agreement is not so construed, then the Guardian's claim must fail, for the Guardian asserts no other or greater right than the Trust Agreement itself confers * * *."

The trial court indicated that under certain exigent circumstances a trust agreement might be construed by implication to authorize a guardian to exercise a power of appointment.

We find that the trial court did not err in deciding

that the facts herein do not permit the trust agreement to be construed so that the power of appointment could be exercised by a guardian. Furthermore, we find it necessary under App. R. 12 to pass upon all the errors assigned and briefed by counsel, stating the reasons for our decision. In doing so, we are constrained to comment to some extent upon the circumstances under which a guardian, acting in its discretion for the best interests of its ward, cannot properly exercise such power of appointment as that involved herein. We do not hold that there are absolutely no circumstances under which a guardian could exercise a power of appointment on behalf of an incompetent ward, the donee.

Traditionally, a guardian is limited to taking custody of a ward's property, protecting it and, with the court's approval, making a certain disposition of it. *Zuber* v. *Zuber* (1952), 93 Ohio App. 195. However, as the appellant illustrates by many cases, guardians are permitted by court order to go beyond traditional bounds. Some of the cases cited by the appellant to illustrate that an incompetent widow's election may be exercised by her guardian are: *Vanderlinde* v. *Bankers Trust Co.* (1935), 270 Mich. 599, 259 N. W. 337; *In re Strauch* (1968), 15 Ohio St. 2d 192; *In re Cook* (1969), 19 Ohio St. 2d 121. These Ohio cases do not indicate that a guardian may make an election on behalf of a widow; they do, however, indicate that a guardian has standing to appeal the probate court's election on behalf of the incompetent widow. The election made by the Probate Court on behalf of an incompetent surviving spouse is provided for by R. C. 2107.45.[3] We note with approval the

---

[3]R. C. 2107.45 states: "Election made by one under legal disability.

"When, because of a legal disability, a surviving spouse is unable to make an election as provided by section 2107.39 of the Revised Code, as soon as the facts come to the knowledge of the probate court, the probate court shall appoint some suitable person to ascertain the value of the provision made for such spouse by the testator and the value of the rights in the estate of such testator under sections 2105.01 to 2105.21, inclusive, of the Revised Code. Such appointment by the court shall be made at any time within the time allowed for election under section 2107.39 of the Revised Code.

statements quoted in appellant's brief made by the court in the case of *Dorfmeier* v. *Dorfmeier* (1954), 69 Ohio Law Abs. 15, 27, where the guardian was permitted, with the authority of the court, to elect to purchase the mansion house of the decedent at the appraised value on behalf of the incompetent surviving spouse.

"After an examination of the foregoing cases and text writers hereinbefore cited, it must be concluded that this Court, sitting as a court of equity, has the inherent power, independent of statute, to intervene and permit the guardian to exercise for this incompetent a right which would be otherwise lost to her because of her mental condition, there being no statute which gives the incompetent surviving spouse an adequate remedy at law."

Likewise, we approve the statements set forth by the appellant that the exercise of such power by the guardian must be done under the authority of the Probate Court appointing him, citing 26 Ohio Jurisprudence 2d 433, 448, Guardian and Ward, Sections 88 and 108.

We further note the cases of *In re Houghton's Estate* (1954), 118 Vt. 228, 105 A. 2d 257 (guardian authorized to invade trust corpus); *Jones* v. *Clyman* (1922), 193 Iowa 1248, 188 N. W. 954, and *Jacques* v. *Swallow* (1951), 77 R. I. 517, 78 A. 2d 4 (guardian of incompetent spouse authorized by court to exercise power granted by will to sell real estate), and the additional cases set forth by appellant in its brief.'

"When the person appointed returns the report of his investigation, the court shall determine whether the provision made by the testator for the surviving spouse in the will or the provision under sections 2105.01 to 2105.21, inclusive, of the Revised Code, is better for such spouse and shall elect accordingly. The court shall thereupon record upon its journal the election made for such spouse, which election, when so entered, shall have the same effect as an election made by one not under such disability.

"'(1) Compromising in the settlement of will contest actions; *Metzner* v. *Newman* (1923), 224 Mich. 324; *Madden* v. *Shallenberger* (1929), 121 Ohio St. 401; (2) revoking trusts (revocable) established by wards while competent; *Brooklyn Trust Co.* v. *Smart* (1937), 293 NYS 823; *Ganley* v. *Lincoln Sav. Bank* (1939), 13 NYS 2d 571; *Rickel* v.

In each and every one of the cases cited by appellant the court acted so that a direct benefit would result to the incompetent ward, and, in most instances, it was for the care, maintenance and essential needs of the ward, not otherwise provided for.

By contrast in the case herein, the trustee was authorized by the trust agreement, itself, to provide for all of the needs of the donee, and, if necessary, could invade the trust *res* to do so. There were no compelling reasons on behalf of the ward to permit the exercise of the power of appointment set up in the trust agreement. At the time of the attempted exercise of the power of appointment by the guardian, the ward was not without funds or without access to the necessities of life. The guardian had not made any demand upon the trustee to provide for the needs of the ward. Actually, at the time in question, the ward was in imminent danger of death and had been so at the time of the appointment of the guardian.

The trust had not been funded beyond the original deposit of $25 and until such time as the administration of the estate of the donor had proceeded to permit the pour over of the funds from the administration of his estate there would have been no liquid assets to be derived from the exercise of the power of appointment. To the extent that the anticipated trust *res* could be used for the benefit of the donee, the trustee was in a much better position under the terms of the trust agreement to provide for the donee rather than the guardian. There is a further im-

---

*Peck* (1942), 2 N. W. 2d 140 and annotations in 188 A. L. R. 1383; (3) making charitable gifts out of an incompetent's funds: Annotation, 99 A. L. R. 2d 946; (4) making non-charitable gifts out of an incompetent's funds: Annotation, 24 A. L. R. 3d 863; (5) exercising rights contained in an incompetent's insurance policies: *In re Estate of Sellers* (1951), 154 Ohio St. 483, 96 N. E. 2d 595; (6) waiving a ward's interest under a will: *Dolbeare* v. *Bowser* (1925), 254 Mass. 57, 149 N. E. 626; (7) exercising options of a ward to purchase an interest in a partnership: *Dilworth's Estate* (1914), 243 Pa. 475, 90 A. 356; (8) filing a petition in bankruptcy on behalf of ward: *Hilliard* v. *McCrory* (1943), 110 Colo. 369, 134 P. 2d 1057; (9) maintaining an action to annul the marriage of an incompetent: Annotation, 6 A. L. R. 3d 681."

portant distinction in the facts of the case herein wnen compared to those cited, where the guardian acted with the authority of the probate court to exercise a personal power on behalf of his ward. In those cases, there was no existing trust agreement under which the trustee had certain duties to be exercised under the terms of its agreement with the original donor. Herein, the Toledo Trust Co., the trustee, appointed by the donor under a trust agreement, had definite duties to perform and these duties as a fiduciary under the trust agreement relative to the donee named therein could well require action in conflict with the actions of the guardian for such donee who had become incompetent.

In cases where the purpose of the guardian's election has been to augment the spouse's estate so that the elective property would pass to the spouse's beneficiaries upon the spouse's death, rather than to the beneficiaries under the decedent's will, the court has prohibited or set aside the election. In *Dolbeare* v. *Bowser* (1925), 254 Mass. 57, 149 N. E. 626, cited by the appellant, the guardian of an incompetent surviving husband had acted to exercise a statutory right of election against the deceased wife's will. The husband was then in poor health and his death was imminent. The effect of the election was to put the elective property into the husband's estate for ultimate descent to his heirs, depriving the wife's residuary legatees. Upholding a petition to set aside the guardian's election, the Massachusetts court said:

"The guardian occupies a fiduciary relation toward his ward. His bond requires him to manage and dispose of all of his ward's property according to law and for the best interests of the ward, and faithfully to perform his trust in relation to the trust property and to the custody and maintenance of the ward. G. L. c. 205, Sections 1, 12. His authority and interest extend only to such things as may be for the benefit or advantage of the ward. *Oliver* v. *Houdlet*, 13 Mass. 237, 239. It was stated in England many years ago that 'In managing the estate of a lunatic the general principle is to attend solely to the interest

of the owner without any regard to the succession;' and that 'the Courts have always shut out of their view all consideration of eventual interests; and consider only the immediate interest of the person under their care.' *Oxenden* v. *Lord Compton,* 2 Ves. Jr. 69, 72." 254 Mass. 61, 149 N. E. at 627.

In *Kinnett* v. *Hood* (1962), 25 Ill. 2d 600, 185 N. E. 2d 888, the Illinois Supreme Court set aside a probate court's order authorizing a guardian of an incompetent surviving spouse to elect against the deceased spouse's will, stating:

"There was no effort on the part of the testator to disinherit his [incompetent] wife. On the contrary, the will was carefully designed to protect her best interests. * * * *Not only was she given all the income, if necessary, but the trustee was authorized to invade the principal, without limit, to maintain her usual and customary position in life.* The net result is that the incompetent is protected by the full measure of the estate if necessary. * * * It is apparent that the right to renounce is one for the benefit of the surviving spouse, *and yet the only benefit to be derived through renunciation in this case would inure to the heirs of the incompetent."* (Emphasis supplied.) 25 Ill. 2d 604, 185 N. E. 2d at 890.

In *Minnehan* v. *Minnehan* (1958), 336 Mass. 668, 147 N. E. 2d 533, the guardian had filed a petition for the partition and sale of real estate, held by the incompetent ward and another as joint tenants. While the petition was pending the ward died. The guardian thereafter continued to prosecute the petition for partition and sale, and moved for the entry of an order to that effect, *"nunc pro tunc,"* as of a date prior to the ward's death. The effect would have been to pass the ward's interest in the property to the ward's probate estate, depriving the surviving joint tenant of his right of succession. The trial court denied the guardian's motion for the order of partition and sale. Affirming, the Supreme Judicial Court said:

"It is implicit in the law of guardianship that authority of a conservator to deal with the property of a ward ex-

tends only to such acts as are for the benefit or advantage of the ward. Unless necessary for the ward's maintenance he cannot vary or change the ward's property so as to affect any alteration in its succession. *Dolbeare* v. *Bowser,* 254 Mass. 57, 61. \* \* \* *It could be found that the petition was filed when there was no immediate necessity to provide additional funds for the ward's comfortable maintenance and when the petitioner had cause to anticipate his early death."* 336 Mass. 671, 147 N. E. 2d at 535. (Emphasis supplied.)

In *Penhallow* v. *Kimball,* 61 N. H. 596, quoted by the Michigan Supreme Court in *Andrews* v. *Bassett* (1892), 92 Mich. 449, 52 N. W. 743, the New Hampshire Supreme Court, speaking of the guardian's exercise of the right of election for an incompetent surviving spouse, said:

"In making such election, the (guardian's) court is guided by considerations for the benefit of the lunatic, without regard to what the advantage may be to the heirs."

In *Vanderlinde* v. *Bankers' T rust Co.* (1935), 270 Mich. 599, 259 N. W. 337, the Michigan Supreme Court held that where an incompetent surviving spouse dies and the guardian has not yet exercised the incompetent's right of election against the previously deceased spouse's will, the right terminates and does not pass to the incompetent spouse's heirs or personal representatives. Explaining this holding, the court contrasted the basis on which the guardianship court would have exercised that right during the incompetent's lifetime, and the basis on which the incompetent's heirs or representatives would exercise it had their claim to do so been upheld:

"Election by order of the court and by representatives or heirs would proceed upon different theories. In the former, the interests of the wife herself, but with consideration for the rights of others, are the governing factors. In the latter, personal and selfish interests naturally predominate." 270 Mich. 607, 259 N. W. at 339.

The facts in the case herein indicate that the attempted exercise of the power of appointment by the guardian was for the sole purpose of affecting the succession of assets

in the trust rather than as a direct benefit to the donee. As the appellant has pointed out, the courts have tended to extend the power of a guardian on behalf of his ward in those instances where it has been clearly indicated that the benefit is for the ward. Appellant also points out that the Uniform Probate Code, Section 5-408(4), provides as follows:

"The court may exercise or direct the exercise of its authority to exercise or release powers of appointment of which the protected person is donee only if satisfied, after notice and hearing, that it is in the best interest of the protected person, and that he either is incapable of consenting or has consented to the proposed exercise of the power."

Of course, this Uniform Probate Code is not in effect in Ohio and is only used to indicate the possible future law in Ohio. It is to be noted that even this provision does not indicate to whom the notice of the proposed exercise of the power of appointment should be given. We would assume that the parties affected, to wit, the trustee and the takers-in-default would be entitled to notice. The question is also raised as to the nature of the hearing. Broad as this section of the Uniform Probate Code may be, it does not purport to give testamentary disposition in the guardian of an incompetent person.

A person can be determined to be incompetent and the guardian may be appointed; nevertheless, the incompetent could still make a valid will. Although the facts in the present case would indicate that the donee probably was incompetent to make a will, the probate court made no determination of such fact. Had a will been made by the incompetent person, a guardian having been appointed, the question of the competency for testamentary purposes would have been one to be determined at a later date. *In re Vallender's Estate* (1945), 310 Mich. 359, 17 N. W. 2d 213; *Kennedy* v. *Walcutt* (1928), 118 Ohio St. 442.

From the chronology of events,[5] it is apparent that the

---

[5]See note 1, *supra*.

final judgment of the Probate Court of Lenawee County authorizing the guardian to exercise the power of appointment set forth in the trust agreement was entered after the death of the ward, by a *nunc pro tunc* entry. This fact is important in determining the purpose of the exercise of the appointment. It was apparent to the guardian that there was no immediate necessity to provide funds for the ward's maintenance and it must have been evident to the guardian that the death of the ward was imminent. This fact is persuasive in the determination that the purpose of the guardian's exercise of the power of appointment was to affect the succession to the trust property.

The appellant argues that a failure to exercise the power of appointment will expose the estate of the ward to a Michigan inheritance tax. The imposition of this tax affects the heirs' interests. The questionable benefit to the ward is not sufficient in this case to authorize the exercise of the power of appointment.

The contention of the takers-in-default that the *nunc pro tunc* order issued by the Lenawee County Probate Court was of no effect is not well taken. At least, the death of the ward, ipso facto, did not invalidate the *nunc pro tunc* order.

The takers-in-default raised the question of the validity of the *nunc pro tunc* order of the Probate Court of Lenawee County, Michigan; the Toledo Trust Co. did not raise this question. Courts, having jurisdiction in furtherance of justice, may enter judgments *nunc pro tunc* if a party to the action dies after a verdict, or after the case has been submitted to the court for a decision. The matter of the application of the guardian for the exercise of the appointment had been submitted to the court. (See chronological statement.) 1 Ohio Jurisprudence 2d 73, Abatement, Survival and Revival, Section 51; *Dial* v. *Holter* (1856), 6 Ohio St. 228; *In re Jarrett* (1884), 42 Ohio St. 199. In the cases cited, where the court did allow the guardian to exercise a personal power on behalf of his ward, in the interest of justice, to elect to take under the will, to elect to buy at the appraised value, to make certain gifts as the incom-

petent had been accustomed to make, had the ward died unexpectedly, between the original application of the guardian and the date of the court's approval, the court properly could have made a *nunc pro tunc* entry to carry out the anticipated action. In other words, under proper circumstances, in the absence of proof that the guardian had proceeded with the anticipated action in contemplation of the death of the ward, the court could properly enter a *nunc pro tunc* order.

In conclusion, we find that the judgment of the Probate Court of Lenawee County, under the authority of which the guardian attempted to exercise the power of appointment on behalf of the incompetent donee, is not entitled to full faith and credit to the extent that such judgment must be honored by the Toledo Trust Co., the trustee. We further conclude that no exigent circumstances existed which might permit the trust agreement to be construed so that the power of appointment was capable of being exercised by the guardian. We further conclude that under the facts of this case, the general power of appointment set forth in the trust agreement was not capable of being exercised by the guardian of the incompetent donee in its discretion, even though authorized by the court appointing the guardian, where the purpose of the exercise of the appointment is not to provide for the incompetent's care, maintenance, support or other benefits to herself, but is, on the contrary, to exercise, in effect a testamentary disposition of the property involved, especially where the death of the incompetent is imminent. All five assignments of error, are not well taken.

*Judgment affirmed.*

BROWN, P. J., and POTTER, J., concur.