FRIEDRICH, GUARDIAN, APPELLEE, *v.* BANCOHIO NATIONAL BANK, TRUSTEE, APPELLANT.

(Nos. CA83-06-021, -07-024 and -07-026
—Decided January 30, 1984.)

*Messrs. Woods & Hamilton* and *Mr. Glenn S. Hamilton,* for appellee.

*Messrs. Cole, Acton, Harmon & Dunn, Mr. Robert C. Acton, Mr. Charles D. Swaney, Mr. Sandford H. Flack, Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. George R. McCue* and *Mr. Jon R. Philbrick,* for appellant.

JONES, J. On November 27, 1974, Eitel J. Friedrich created a trust by executing a trust agreement with defendant-appellant, BancOhio National Bank ("BancOhio"). BancOhio was named as trustee of the trust.[1] Friedrich, in his capacity as the grantor, funded the trust with cash and securities. Under the terms of the trust, BancOhio was to use the income generated by the trust to pay the administrative expenses and taxes associated with the operation of the trust. The remaining income, if any, was to be paid to the grantor in such installments as the grantor elected. If, at any time during the grantor's life, it was BancOhio's opinion that the grantor was incapacitated, BancOhio was given the discretion to use any or all of the net income and principal from the trust for the support, comfort and welfare of the grantor in his accustomed manner of living or for any other purpose which BancOhio believed to be the grantor's best interests.

Upon the death of the grantor, the trust instrument provided that the grantor's brother, defendant-appellant, Kurt W. Frederick,[2] was to receive regular monthly payments of an annual amount equal to five percent of the initial fair market value of the property as finally determined for federal estate tax purposes. These payments were to continue during the natural life of Kurt Frederick. Following the deaths of both the grantor and his brother, the trustee was instructed to distribute the assets of the trust equally between the Volunteers of America and the Salvation Army, in fee simple.

In Paragraph 3 of Article I of the trust agreement, the grantor reserved the right to revoke the trust. That particular section of the trust agreement reads, as follows:

"The Grantor reserves the right and power at any time and from time to time while living to revoke in whole or in part this Trust Agreement and to withdraw any insurance policy, security, property or other funds belonging to the trust estate or any part thereof; or to alter or amend any term or provision of the Trust Agreement, except that the Grantor shall have no power to change the

---

[1] The trust instrument states that the trust agreement is between Eitel J. Friedrich as the grantor, and First National Bank of Springfield as trustee. Article IV of the trust provides for successor trustees where there is a new trustee or the original trustee changes its name, combines with, or is purchased or absorbed by another trust company or corporation. The record of the case at bar indicates that BancOhio is the successor in interest to First National Bank of Springfield's position as trustee under the trust agreement.

[2] The grantor's brother is referred to in the trust instrument as "Kurt W. Friedrich." When named as a defendant in the plaintiff's complaint filed in the Probate Division of the Madison County Court of Common Pleas, he was again referred to as "Kurt W. Friedrich." In his answer, he notes that he was incorrectly referred to as "Friedrich" and that the correct spelling of his name is "Frederick."

duties of the Trustee without its written consent. Upon the death of the Grantor, this Trust Agreement shall thereafter be irrevocable and not subject to alteration or amendment by any person.''

On March 21, 1982, plaintiff-appellee, Betty E. Friedrich, the grantor's spouse, was appointed guardian of the person and estate of Eitel J. Friedrich by the Madison County Court of Common Pleas, Probate Division. On May 28, 1982, she sent a notice of revocation of the trust to BancOhio, indicating that as the guardian of Eitel J. Friedrich she was exercising the grantor's power to revoke the trust pursuant to Paragraph 3, Article I of the trust agreement. Betty Friedrich also asked the bank to transfer all of the trust assets to her in her capacity as guardian of Eitel Friedrich. After reviewing the revocation and trust instrument, Banc-Ohio rejected Betty Friedrich's claim that she had the authority as guardian to exercise her ward's power to revoke the trust. As a result, the trustee refused to transfer the trust assets to the guardian.

On June 14, 1982, Betty Friedrich filed a complaint for declaratory judgment in the Probate Division of the Madison County Court of Common Pleas. Named as defendants in the complaint were BancOhio, Kurt W. Frederick, the Volunteers of America, the Salvation Army and the Ohio Attorney General. The complaint asked that the court determine, *inter alia,* if Betty Friedrich, as guardian of a ward who had established an *inter vivos* trust prior to being declared incompetent, had the authority and power to exercise her ward's power of revocation and to revoke the trust on behalf of the ward.

On October 20, 1982, Eitel J. Friedrich died.

A hearing was held on appellee's complaint on November 12, 1982. Betty Friedrich testified that after she was appointed guardian her husband's failing health and serious physical condition re-quired that he receive extended medical care and treatment, including the necessity of entering a nursing home. Mrs. Friedrich stated that she petitioned the trustee for additional funds from the trust to help defray the additional cost associated with her husband's medical care, but that BancOhio failed to fulfill her request. The lack of cooperation on the part of the bank led to Mrs. Friedrich's decision to revoke the trust. On cross-examination, Mrs. Friedrich's testimony revealed that the guardianship had liquid assets which were well in excess of $40,000.

John Swinford, a trust officer for BancOhio, testified that BancOhio was willing to distribute trust funds for Mr. Friedrich's medical care in accordance with the trust provision which gave BancOhio the discretion to use the trust assets and income for any purpose which BancOhio believed to be in the best interests of the grantor. Swinford further stated that he informed Mrs. Friedrich of the bank's willingness to distribute the trust funds upon Mrs. Friedrich's request. According to Swinford, Mrs. Friedrich never requested, either orally or in writing, that BancOhio provide any trust income or principal for the care and support of Mr. Friedrich.

The probate judge concluded as a matter of law "* * * that a guardian of the estate of a ward possesses the authority without court order or approval to revoke transfers of property owned by the ward when such revocation requires no other consent or concurrence than that of the guardian * * *." The judge further found, *inter alia,* that since Eitel J. Friedrich had died and BancOhio was named as executor of his estate, then BancOhio should retain the corpus and income of the trust in its capacity as executor subject to disposition as directed by the last will and testament of Eitel J. Friedrich.

Appellants BancOhio, Kurt W. Frederick and the Ohio Attorney

General all filed notices of appeal. Appellants offer two assignments of error which read as follows:

### First Assignment of Error

"The probate court erred in holding that, as a matter of law, a guardian possesses the authority, without court order or approval, to revoke an *inter vivos* trust established by the ward prior to his incompetency."

### Second Assignment of Error

"The probate court erred in ordering the trustee to transfer the trust assets to the executor of the ward's estate."

The primary issue to be addressed in the first assignment of error is whether a settlor's power to revoke an *inter vivos* trust may be exercised by the settlor's guardian without first obtaining a court order or approval for such action. The lower court held that the guardian had the right, as a matter of law, to revoke her ward's *inter vivos* trust without any prior court order or direction. Appellee's position is that we follow the ruling set forth in *Miller* v. *Peoples Federal S. & L. Assn.* (1981), 68 Ohio St. 2d 175 [22 O.O.3d 406]. In *Miller,* funds were deposited with the defendant savings institution in the form of several payable-on-death ("P.O.D.") accounts naming various individuals as the beneficiaries. The depositor was later declared incompetent and a guardian of her person and estate was appointed. The guardian had the P.O.D. accounts changed so that the guardian rather than the original beneficiaries was named as the beneficiary on all of the accounts. The guardian apparently took this action without first obtaining a court order. The Supreme Court held that the savings institution, upon the request of the guardian, could substitute the guardian's name on the P.O.D. account without incurring any liability to the former beneficiaries.

In arriving at its decision, the Supreme Court examined the ownership rights of P.O.D. accounts as determined by appropriate statutory authority.[3] The court went on to note that the statutory language "gives the depositor *full ownership* of a P.O.D. account's funds during her lifetime * * *. It follows logically that the *depositor is the owner* of the account even after a Probate Court declares her legally incompetent." (Emphasis added.) *Miller, supra,* at 178. Recognizing that a guardian acting as a fiduciary may exercise all rights of ownership which the ward could have exercised, the Supreme Court concluded that it was within the powers of a guardian to designate a change in the registration of a ward's P.O.D. account.

Appellee urges us to adopt the *Miller* rationale and hold that, like a guardian who changes the beneficiary of a ward's P.O.D. account, a guardian who exercises a ward's power to revoke an *inter vivos* trust need not make a prior application for court approval. For

---

[3] R.C. 2131.10 and 2131.11 govern the creation of P.O.D. accounts in Ohio. The nature of ownership in such accounts is set forth in R.C. 2131.10:

"A natural person, adult or minor, referred to * * * as the owner, may enter into a written contract with any * * * [savings institution] transacting business in this state, whereby the proceeds of the owner's * * * deposit * * * may be made payable on the death of the owner to another person, referred to * * * as the beneficiary * * *.

"Every contract * * * authorized by this section shall be deemed to contain a right on the part of the owner during his lifetime both to withdraw the proceeds of such * * * deposit, * * * in whole or in part, as though no beneficiary has been named, and to designate a change in beneficiary. The interest of the beneficiary shall be deemed not to vest until the death of the owner. * * *"

the reasons stated below, we reject appellee's argument.

R.C. 2131.10 and 2131.11 were adopted by the General Assembly with the apparent intention of recognizing in Ohio the use of a deposit in a financial institution known as a "tentative trust" or a "Totten trust." *Powell* v. *City Natl. Bank & Trust Co.* (1981), 2 Ohio App. 3d 1; *In re Totten* (1904), 179 N.Y. 112, 71 N.E. 748. R.C. 2131.10 and 2131.11 specifically provide that P.O.D. accounts are based on a contractual relationship between the depositor and the financial institution maintaining the account. As was stated in *Miller, supra,* the depositor retains an ownership right to change the beneficiary or withdraw the funds. In other words, legal title to the funds in the account remains with the depositor. Such is not the situation with an *inter vivos* trust, wherein a settlor out of necessity must convey the legal title to the trust *res* to the trustee so that the trustee may hold the property for the benefit of the *cestui que trust. First Natl. Bank of Cincinnati* v. *Tenney* (1956), 165 Ohio St. 513 [60 O.O. 481]; *First Natl. Bank of Middletown* v. *Gregory* (1983), 13 Ohio App. 3d 161.

By reserving a power of revocation, a settlor retains the right to reinvest himself with legal title at some point in the future. However, the power of revocation does not give the settlor the same ownership interest in the trust *res* as that which a depositor retains upon creating a P.O.D. account. In a P.O.D. account, the depositor-owner retains both the legal and equitable interests in the account. Also, the interest of a "beneficiary" in a P.O.D. account does not vest until the death of the owner. *Eger* v. *Eger* (1974), 39 Ohio App. 2d 14 [68 O.O.2d 150]. Thus, a P.O.D. account does not encompass one of the fundamental essentials of a trust, namely, the separation of the legal estate from the equitable estate. See *Hill* v. *Irons* (1953), 160 Ohio St. 21 [50 O.O. 485].

Even though Eitel J. Friedrich had a beneficial interest in the trust, he still had to relinquish legal title since a trust cannot exist when legal and equitable title to the *res* are held by the same individual. *Hill, supra.* Having established that a P.O.D. account does not embrace the same characteristics inherent in an *inter vivos* trust, we hold that the decision rendered in *Miller, supra,* is not controlling in the case at bar.

This case involves the competing interests of two classes of fiduciaries — guardians and trustees. The guardian has a duty to manage and conserve the assets and property belonging to her ward in order to provide for the ward's care and maintenance. *Zuber* v. *Zuber* (1952), 93 Ohio App. 195 [50 O.O. 496].[4] "Traditionally, a guardian is limited to taking custody of a ward's property, protecting it and, with the court's approval, making a certain disposition of it." *Toledo Trust Co.* v. *Natl. Bank of Detroit* (1976), 50 Ohio App. 2d 147, 159 [4 O.O.3d 125]. A trustee is obligated to protect and preserve the trust *res* entrusted to it under the trust agreement. *Gregory, supra; In re Fiorelli's Estate* (App. 1956), 74 Ohio Law Abs. 38; *Bd. of Edn.* v. *Unknown Heirs of Aughinbaugh* (1955), 99 Ohio App. 463 [59 O.O. 267].

We recognize that the guardian sections of the Revised Code are out of necessity broad and general in their scope. See *Dorfmeier* v. *Dorfmeier* (P.C. 1954), 69 Ohio Law Abs. 15. These sections neither include nor exclude the right of a guardian to exercise a power to revoke an *inter vivos* trust which is held by the ward. However, Ohio courts have held that a guardian is entitled to exercise a ward's right or interest when such action on the part of the guardian was shown to be in the best interests of

---

[4] The duties of a guardian of the person and the estate are more fully set forth in R.C. 2111.13, 2111.14 and 2111.15.

the ward. *Dorfmeier, supra.* Cf. *Miller v. Yocum* (1970), 21 Ohio St. 2d 162 [50 O.O.2d 372] (guardian had authority to apply for an order to withdraw and use funds held in ward's joint and survivorship bank account if funds were required to provide necessary support and maintenance for ward); *Toledo Trust Co., supra* (guardian not permitted to exercise ward's power of appointment absent a showing that the exercise of the power was for the ward's care, maintenance or support). In these cases, the guardian's ability to exercise the ward's right or interest was predicated upon the guardian obtaining the prior approval of the court having jurisdiction to supervise or manage the guardianship.

We have been unable to find any Ohio cases which deal directly with the issue presented by the case at bar: whether a guardian can exercise her ward's right to revoke an *inter vivos* trust established by the ward prior to incompetency without first obtaining a court order or court approval. Generally, in the absence of express direction to the contrary, the power to revoke a trust is personal to the settlor when reserved to him. Bogert & Bogert, The Law of Trusts and Trustees (2 Ed. Rev. 1983), Section 1000. If an individual who retains such a power of revocation or alteration later becomes incompetent, his guardian does not succeed to the power although it may be exercised by the court for him. *Id.* In *Chase Natl. Bank* v. *Ginnel* (N.Y. Cty. Sup. Ct. 1944), 50 N.Y.Supp. 2d 345, a settlor who was later declared incompetent had created an *inter vivos* trust and retained the right to revoke the trust. The Supreme Court for New York County held that such a right of revocation may not be exercised during the incompetency of the settlor by her committee. The New York court further held that the powers of a committee of an incompetent are, in general, limited to those powers incident to the conserva-

tion of the property and the maintenance of the incompetent. *Ginnel, supra,* at 347.

In *Weatherly* v. *Byrd* (Tex. 1978), 566 S.W.2d 292, a settlor had created an *inter vivos* trust. The settlor, who was also the beneficiary of the trust, retained the right to revoke the trust. The settlor was later found to be incompetent; a guardian was appointed, and the guardian sought to have the settlorward's trust revoked. A Texas court of civil appeals had held that the guardian had the authority to revoke the trust without the prior authorization of the probate court since the right to revoke "vested" in the guardian upon the guardian's appointment and qualifications to act as such. See *Weatherly* v. *Byrd* (Tex. Civ. App. 1977), 552 S.W.2d 573.

The Texas Supreme Court reversed, stating that:

"The right to revoke is a personal right involving the exercise of personal discretion and * * * the right to revoke a revocable trust, absent an agreement to the contrary, is a purely personal right of the settlor and does not vest in the guardian." *Byrd, supra,* at 293.

The Texas court went on to hold that the guardian must apply to a court of competent jurisdiction for authorization to revoke the trust.

It is a generally accepted principle that a guardian may not exercise the purely personal elective rights of his or her ward. *Byrd, supra*; *In re Estate of Atkins* (Miss. 1982), 422 So.2d 754. Our review of the entire trust instrument, as well as Paragraph 3 of Article I, leads us to the conclusion that the right of revocation reserved by Eitel J. Friedrich in his trust with appellant BancOhio was a personal right, to be held by the grantor alone. We cannot agree with the holding of the lower court which amounts to a statement that the guardian possesses an "inherent" right to revoke a trust established by the ward, absent a clear showing that such revoca-

tion is in the best interests of the ward and is necessary for the ward's care, maintenance and support. The record indicates that appellee controlled liquid assets in the guardianship in excess of $40,000. Although the physical condition of Eitel J. Friedrich would precipitate additional and increased financial expenditures on the part of the guardian, the record fails to clearly show that either the guardianship assets could not meet the increased expenses or that the trust assets were needed for such expenses.

In the case at bar, the relationship between the parties presents us with an additional reason to question appellee's actions. Appellee was the spouse of Eitel J. Friedrich as well as the guardian of his person and estate. As the surviving spouse, she stood to benefit from having her husband's estate substantially increased by the addition of the trust assets. Thus, her attempted revocation of the trust takes on the appearance of being in her own interest, as the surviving spouse, rather than being in the best interests of her ward. This ulterior motive is considerably enhanced by appellee's action in pursuing the litigation and revocation of the trust after the ward had died and the trust assets were no longer urgently needed for the ward's care and support.

We do not agree with the position that a guardian can, as a matter of law, revoke an *inter vivos* trust established by her ward prior to the ward's being declared *non compos mentis* without first obtaining a proper court order to that effect. Such a principle would give guardians free reign to ostensibly act in the interests of their wards without the judicial control and supervision necessary to ensure the proper and appropriate exercise of their fiduciary duties. For these reasons, the first assignment of error is well-taken and is hereby sustained.

Having found that the guardian could revoke the trust on behalf of the ward, the probate court ordered BancOhio to transfer the trust assets to itself as executor of Eitel J. Friedrich's estate. Since we have already determined that the probate court erred in ruling that the guardian could revoke the trust without a court order and absent a showing of need, we further find that the probate court erred in ordering the trustee, BancOhio, to transfer the trust assets to the executor of the ward's estate. The second assignment of error is sustained and the probate court's order instructing BancOhio to transfer the trust assets is hereby vacated. The assets of the trust are to be retained by BancOhio in its capacity as trustee to be distributed in accordance with the terms and provision of the trust agreement executed between BancOhio and Eitel J. Friedrich.

The judgment of the trial court is reversed.

*Judgment reversed.*

HENDRICKSON, P.J., and KOEHLER, J., concur.