[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 600.]

IN RE GUARDIANSHIP OF LOMBARDO.

[Cite as *In re Guardianship of Lombardo*, 1999-Ohio-132.]

*Corporations—Voting by shareholders—Voting trusts—Probate court has concurrent jurisdiction with general division of court of common pleas over an irrevocable voting trust created pursuant to R.C. 1701.49—Probate court may not revoke a valid irrevocable voting trust created pursuant to R.C. 1701.49.*

1. A probate court has concurrent jurisdiction with the general division of the court of common pleas over an irrevocable voting trust created pursuant to R.C. 1701.49.

2. Even when acting in the best interest of a ward, a probate court may not revoke a valid irrevocable voting trust created pursuant to R.C. 1701.49.

(No. 98-1807—Submitted June 9, 1999—Decided September 29, 1999.)

APPEAL from the Court of Appeals for Summit County, No. 18605.

————————————

{¶ 1} Jean Lombardo is the majority stockholder in L & M Properties, Inc. ("L & M"), a family-owned Ohio corporation. Sam and Carl Lombardo, Jean Lombardo's two sons, are also shareholders in L & M. Jean Lombardo owns one hundred twenty-seven shares of the L & M stock. Sam and Carl Lombardo each own sixty-seven and one-half shares of L & M stock.

{¶ 2} On November 4, 1991, Jean Lombardo signed a document entitled "General Durable Power of Attorney and Nomination of Guardian," which gave her son, Sam Lombardo, power of attorney "to act for [Jean Lombardo] and in [her] name in any and all business, financial, legal, personal, and other matters." On May 12, 1992, Jean Lombardo executed a document entitled "Voting Trust Agreement." The agreement provided that Sam Lombardo, as trustee, "shall have

and shall be entitled to exercise and enjoy with respect to the Shares [in L & M], in his unrestricted discretion, any and all rights of a holder of shares in the Company * * *." The agreement was to be *irrevocable* for a period of ten years.

{¶ 3} In January 1996, Sam Lombardo voted Jean Lombardo's stock pursuant to the voting trust and elected himself, his wife, and Carl Lombardo as directors. That same month, Sam Lombardo and his wife moved to divest Carl Lombardo of his authority to act for L & M. When Carl Lombardo continued to act, Sam Lombardo filed an action in the Cuyahoga County Court of Common Pleas, seeking to exclude Carl Lombardo from taking part in any business activities involving L & M.

{¶ 4} On April 17, 1996, Carl Lombardo filed an "Application for Appointment of Guardian of Alleged Incompetent" with the Summit County Probate Court, requesting that a guardian be appointed for Jean Lombardo. He alleged that Jean Lombardo was suffering from a "progressive neurological condition." On May 9, 1996, Sam Lombardo filed an objection to the proposed guardianship, alleging that a guardian was not needed because of the durable power of attorney that was already in place.

{¶ 5} On May 17, 1996, Carl Lombardo filed a Motion for Appointment of Emergency Guardian. He alleged that Sam Lombardo's power of attorney to control Jean Lombardo's affairs created an emergency situation because it allowed him to mismanage her finances. On May 23, 1996, Sam Lombardo filed an objection to Carl Lombardo's Emergency Motion, arguing that Carl Lombardo was merely attempting to gain control of L & M.

{¶ 6} A May 30, 1996 order from the probate court indicated that the parties had stipulated the following: (1) Jean Lombardo had become mentally incompetent as defined in R.C. 2111.01, and (2) the court was to appoint a guardian *ad litem* to determine if a guardian should be appointed to manage Jean Lombardo's estate. The probate court appointed Frederick S. Corns as Jean's guardian *ad litem* to make

these determinations. Corns's report recommended that a guardian be appointed for Jean Lombardo's person and estate but that neither Sam Lombardo nor Carl Lombardo should be appointed in that role. Based upon Corns's recommendation, the magistrate recommended that an independent person be appointed to serve as guardian of Jean's estate. Pursuant to this recommendation, the probate court appointed David E. Waddell as guardian of Jean Lombardo's estate.

{¶ 7} On July 10, 1996, Sam Lombardo amended his complaint in the common pleas court to seek a declaration that the voting trust was valid.

{¶ 8} On October 7, 1996, Waddell filed a motion seeking authority from the probate court to allow him to revoke the voting trust. On October 24, 1996, the probate court issued an order continuing the evidentiary hearing on the issue of revoking the voting trust because the question of the validity of the voting trust was still pending in the court of common pleas.

{¶ 9} During the trial in the court of common pleas pertaining to the validity of the voting trust, evidence was presented that as of November 1993, Jean Lombardo had been diagnosed with a progressive neurological disorder, apparently Alzheimer's disease. However, the doctor who made the diagnosis opined that Jean Lombardo had been competent at the time she created the voting trust. On December 18, 1996, the common pleas court issued a judgment that upheld the validity of the voting trust that gave Jean Lombardo's rights to vote her one hundred twenty-six shares of L & M stock to Sam Lombardo. The appellate court upheld the common pleas court's judgment.

{¶ 10} On January 3, 1997, the magistrate in the probate court recommended that Waddell be granted authority to revoke the voting trust. On June 3, 1997, the probate court adopted the magistrate's recommendation to grant Waddell, as guardian, the authority to revoke the voting trust. The court of appeals affirmed.

**{¶ 11}** The cause is now before this court upon the allowance of a discretionary appeal.

———————————

*Nicola, Gudbranson & Cooper L.L.C.* and *John D. Sayre*, for appellee Carl Lombardo.

*Martindale, Brzytwa & Quick L.L.C.*, *E. John Brzytwa*, *Daniel F. Petticord* and *Richard J. Scislowski*; and *John A. Marksz,* for appellant Sam Lombardo.

*Eugene P. Whetzel; Stark & Knoll Co., L.P.A.,* and *Michael L. Stark*, urging reversal for *amicus curiae*, Ohio State Bar Association.

———————————

**LUNDBERG STRATTON, J.**

**{¶ 12}** The primary issue before this court is whether a probate court, purportedly acting in the best interest of a ward, has the authority to order the guardian of the ward's estate to revoke an irrevocable voting trust executed by the ward prior to her incompetency pursuant to R.C. 1701.49.

**{¶ 13}** The probate court found that, pursuant to its statutorily appointed role as superior guardian to any ward under its jurisdiction, it had authority to order the guardian of Jean Lombardo's estate to revoke her voting trust. The appellate court found that the probate court had authority to address the voting trust as an *inter vivos* trust under R.C. 2101.24(B)(1)(b). We will first address the issue of whether a voting trust is an *inter vivos* trust subject to the jurisdiction of the probate court.

I. A Voting Trust is an *Inter Vivos* Trust Subject to Concurrent Jurisdiction of the Probate Courts and the Courts of Common Pleas

**{¶ 14}** The appellate court held that a voting trust is an *inter vivos* trust subject to general trust principles. We agree. In general terms, a "trust" may be defined as "the right, enforceable in equity, to the beneficial enjoyment of property, the legal title to which is in another." *Ulmer v. Fulton* (1935), 129 Ohio St. 323,

339, 2 O.O. 326, 332, 195 N.E. 557, 564. An *inter vivos* trust is a trust that is created and becomes effective during the lifetime of the settlor. *Hageman v. Cleveland Trust Co.* (1974), 41 Ohio App.2d 160, 161, 70 O.O.2d 322, 323, 324 N.E.2d 594, 596, reversed on other grounds (1976), 45 Ohio St.2d 178, 74 O.O.2d 295, 343 N.E.2d 121. See, also, Black's Dictionary (6 Ed.1990) 821.

{¶ 15} A voting trust involves a transfer of a shareholder's rights arising from the shares to a trustee, who is authorized to vote the shares in the shareholder's place, while the legal title to the shares remains with the shareholders. *Roelofs v. Apple* (1975), 49 Ohio App.2d 155, 3 O.O.3d 202, 359 N.E.2d 710. In other words, a voting trust involves the separation of the beneficial enjoyment of the shares from the legal title in the shares. Thus, a voting trust that is created and becomes effective during the life of the settlor is an *inter vivos* trust because it involves transfer of the beneficial enjoyment of the stock to a trustee while legal title remains with the settlor, where the trust was created during the settlor's lifetime.

{¶ 16} R.C. 2101.24(B)(1) provides:

"The probate court has *concurrent jurisdiction* with, and the same powers at law and in equity as, the general division of the court of common pleas to issue writs and orders, and to hear and determine actions as follows:

" * * *

"(b) Any action that involves an *inter vivos trust*; a trust created pursuant to section 1339.51 of the Revised Code; a charitable trust or foundation; subject to divisions (A)(1)(u) and (z) of this section, a power of attorney, including, but not limited to, a durable power of attorney; the medical treatment of a competent adult; or a writ of habeas corpus." (Emphasis added.)

{¶ 17} The language of R.C. 2101.24 unambiguously provides the probate court with concurrent jurisdiction with the court of common pleas to address *inter vivos* trusts. But we find that the probate court in this case would have been

precluded from addressing the voting trust under R.C. 2101.24 because the validity of the voting trust was *res judicata*.

{¶ 18} In the case at bar, Sam Lombardo filed suit in the Cuyahoga County Court of Common Pleas, seeking a declaration as to the validity of the voting trust. On December 18, 1996, that court issued a judgment holding that the voting trust was valid. The judgment was subsequently upheld in *Lombardo v. Lombardo* (Nov. 25, 1998), Cuyahoga App. No. 72913, unreported, 1998 WL 827583. Under the doctrine of *res judicata,* " ' "an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of *concurrent jurisdiction*." 30 American Jurisprudence, 908, Section 161. * * *' " (Emphasis added.) *Quality Ready Mix, Inc. v. Mamone* (1988), 35 Ohio St.3d 224, 227, 520 N.E.2d 193, 196-197. Thus, the validity of the voting trust was *res judicata* because it had already been settled by the court of common pleas.

{¶ 19} Therefore, we hold that a probate court has concurrent jurisdiction with the general division of a court of common pleas over an irrevocable trust created pursuant to R.C. 1701.49. But in this case, the probate court would have been precluded from addressing the voting trust under R.C. 2101.24(B)(1) because the validity of the voting trust was *res judicata*.

### II. The Probate Court Erred When It Revoked the Voting Trust

A. *Pursuant to R.C. 1701.49, Voting Trusts May Be Irrevocable*

{¶ 20} R.C. 1701.49 sets out the requirements for voting trusts. Specifically, R.C. 1701.49(B) provides:

"No such agreement which grants the voting or consenting rights in respect of shares shall be *irrevocable* for a period of more than ten years, unless the voting or consenting rights granted thereby are coupled with an interest in the shares to which such rights relate, except that, if the agreement so provides, such *irrevocable*

grant may be extended for additional periods of not more than ten years each * * *." (Emphasis added.)

{¶ 21} In construing a statute, a court must ascertain the General Assembly's intent. *State ex rel. Sinay v. Sodders* (1997), 80 Ohio St.3d 224, 227, 685 N.E.2d 754, 758. To determine that intent, a court must look to the language of the statute itself. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 298, 304 N.E.2d 378, 381. "If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretative effort is at an end, and the statute must be applied accordingly." *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 218, 574 N.E.2d 457, 461, overruled on other grounds in *Collins v. Sotka* (1998), 81 Ohio St.3d 506, 692 N.E.2d 581. The word "irrevocable" means " 'incapable of being recalled or revoked; past recall; unalterable.' " *Herder v. Herder* (1972), 32 Ohio App.2d 75, 77, 61 O.O.2d 62, 64, 288 N.E.2d 213, 215, quoting Webster's New International Dictionary (2 Ed.1934). Thus, it is "clear, unequivocal and definite" that the General Assembly intended to provide a settlor the authority to draft a voting trust that cannot be revoked or altered for a ten-year period.

{¶ 22} The voting trust at issue, with regard to its duration, states:

"8. *Term*. The voting trust created pursuant to this Agreement shall be for a term of ten years from the date hereof (the 'Term'), shall be *irrevocable* during the Term and shall survive the death of the Grantor." (Emphasis added.)

{¶ 23} Clearly, Jean Lombardo intended that the voting trust was to be irrevocable for a ten-year period. Thus, the probate court improperly ignored the plain language of both R.C. 1701.49 and Jean Lombardo's voting trust in authorizing the guardian to revoke Jean Lombardo's irrevocable voting trust.

B. *Even When Acting in the Best Interest of a Ward, a Probate Court has No Authority to Revoke an Irrevocable Voting Trust Created in Accordance with R.C. 1701.49*

{¶ 24} Pursuant to R.C. 2111.50 and 2101.24(A)(1)(d), the probate court held that it had the authority to order the appointed guardian to terminate the irrevocable voting trust because to do so was in Jean Lombardo's best interest. We find that the probate court had no basis to use her "best interest" as authority to authorize the guardian to revoke the voting trust pursuant to R.C. 2111.50.

{¶ 25} Probate courts are courts of limited jurisdiction, obtaining their jurisdiction only through statutes or the Ohio Constitution. *State ex rel. Lee v. Trumbull Cty. Probate Court* (1998), 83 Ohio St.3d 369, 372, 700 N.E.2d 4, 7. R.C. 2111.50, cited by the probate court in support of its order to revoke the voting trust, states:

"(A)(1) At all times, the probate court is the superior guardian of wards who are subject to its jurisdiction, and all guardians who are subject to the jurisdiction of the court shall obey all orders of the court that concern their wards or guardianships.

"(2)(a) Subject to divisions (A)(2)(b) and (c) of this section, the control of a guardian over * * * the estate * * * of his ward is limited to the authority that is granted to the guardian by the Revised Code, relevant decisions of the courts of this state, and orders or rules of the probate court.

"(b) Except for the powers specified in division (E) of this section and *unless* otherwise provided in or *inconsistent with another section of the Revised Code, the probate court may confer upon a guardian any power that this section grants to the probate court in connection with wards*.

" * * *

"(B) In connection with any person whom the probate court has found to be an incompetent * * * subject to guardianship and for whom the court has appointed a guardian, *the court has * * * all the powers that relate to the * * * estate of the person and that he could exercise if present and not * * * under a disability * * *.*" (Emphasis added.)

8

1. A probate court may not order a guardian to act for a ward in a manner that conflicts with a section of the Revised Code.

{¶ 26} As noted above, the probate court is the superior guardian of all wards that are subject to its jurisdiction. R.C. 2111.50(A)(1). As superior guardian, the probate court "may confer upon a guardian any power that this section grants to the probate court in connection with wards." R.C. 2111.50(A)(2)(b). The probate court may not confer upon the guardian a power that is "inconsistent with another section of the Revised Code." R.C. 2111.50(A)(2)(b). We find that this language unambiguously limits the probate court's exercise of power in acting as a superior guardian to its ward to those orders that do not conflict with other sections of the Revised Code.

{¶ 27} R.C. 1701.49(B) provides the settlor with the power to make a voting trust irrevocable for a period of ten years. To allow a probate court to revoke an irrevocable voting trust before its ten-year term has expired would conflict with the grant of authority in R.C. 1701.49 that allows a settlor to make a voting trust irrevocable for that period. Accordingly, even when acting in the best interest of a ward, a probate court may not revoke a valid irrevocable voting trust created pursuant to R.C. 1701.49.

{¶ 28} In applying this holding to the facts of this case, we find that the probate court was precluded from authorizing the guardian of Jean Lombardo's estate to revoke the voting trust. As we determined above, R.C. 1701.49(B) provides that an individual may draft an *irrevocable* voting trust. Further, we have concluded that Jean Lombardo intended that the voting trust she executed was to be *irrevocable*. Thus, the probate court was precluded from authorizing the guardian of Jean Lombardo's estate to revoke the *irrevocable* voting trust because to do so would conflict with R.C. 1701.49.

2. Under R.C. 2111.50, a probate court has no greater authority to direct a guardian than the ward would have in managing his or her own affairs if he or she was present and competent.

**{¶ 29}** Under R.C. 2111.50(B), a probate court has "all the powers that relate to the * * * estate of the person and that he could exercise if present and not * * * under a disability * * *." R.C. 2111.50(B). "That which is plainly implied in the language of a statute is as much a part of it as that which is expressed." *Doyle v. Doyle* (1893), 50 Ohio St. 330, 34 N.E. 166, paragraph one of the syllabus. The negative implication of the language in R.C. 2111.50(B) is that a probate court has no authority to grant powers pertaining to a ward's estate beyond those powers that the ward, if present and competent, could exercise himself or herself.

**{¶ 30}** It is a well-founded principle that where the settlor makes no reservation in the language to amend or revoke a trust, he or she may not unilaterally revoke the trust. *Lourdes College of Sylvania Ohio v. Bishop* (1997), 94 Ohio Misc.2d 51, 57, 703 N.E.2d 362, 366, citing 1 Bogert, Trusts and Trustees (2 Ed.Rev.1984) 433, Section 42. As we have discussed previously, the voting trust in this case is irrevocable. Therefore, even if Jean Lombardo were competent, she could not revoke this trust prior to the termination of its ten-year term. Accordingly, the probate court, even as superior guardian, had no authority to revoke the voting trust because it had no greater rights than would Jean Lombardo were she present and competent.

3. Jean Lombardo is not the sole beneficiary of the voting trust.

**{¶ 31}** The probate court cited two cases in support of its order granting authority to Jean Lombardo's guardian to revoke the voting trust despite language indicating its irrevocable nature. Without approving or disapproving of the legal conclusions of either case, we find that these cases do not dictate such a result.

**{¶ 32}** The probate court held that under *Mumma v. Huntington Natl. Bank* (1967), 9 Ohio App.2d 166, 38 O.O.2d 183, 223 N.E.2d 621, an "irrevocable" trust

may be revoked by the settlor upon application to the proper court where the settlor is the sole beneficiary of the trust. The probate court determined that Jean Lombardo was the sole beneficiary of the voting trust, and thus under *Mumma* the voting trust was, in effect, revocable. The court then cited *Friedrich v. BancOhio Natl. Bank* (1984), 14 Ohio App.3d 247, 14 OBR 276, 470 N.E.2d 467, for the proposition that the probate court may authorize a guardian to revoke an irrevocable trust.

{¶ 33} We disagree with the probate court's determination that Jean Lombardo is the sole beneficiary of the voting trust. We acknowledge that Jean Lombardo is a beneficiary of the voting trust. But we believe that Sam Lombardo is also a beneficiary. Prior to becoming trustee, Sam Lombardo was a minority shareholder in L & M Properties. After acquiring the right to vote Jean Lombardo's stock through the voting trust, Sam Lombardo, in effect, became the majority shareholder of L & M. Being converted from a minority shareholder to, in effect, the majority shareholder is a great benefit. Sam Lombardo's interest as a beneficiary of the voting trust is implicitly recognized by a provision in the voting trust, which allows him to be a "shareholder," and that he "may otherwise conduct and manage matters between himself and the Company, as fully and freely as if he were not the Trustee hereunder." Thus, Sam is also a beneficiary of the voting trust.

{¶ 34} Since Jean Lombardo is not the sole beneficiary of the voting trust and there is no evidence Sam Lombardo has consented to terminate the trust, *Mumma* is not applicable to this case. *Friedrich* is also not applicable because *Friedrich* only provides that the probate court may order a guardian to revoke a *revocable* trust. Accordingly, neither *Mumma* nor *Friedrich* provides the probate court any authority to revoke the voting trust.

## C. *Public Policy*

{¶ 35} There are two competing interests in this case: (1) the probate court's plenary power to act as a superior guardian to its wards, and (2) a settlor's intent in

creating an irrevocable voting trust. We recognize a probate court's broad power to authorize a guardian to act in the best interest of its ward. But we believe that public policy also dictates a limit to this power in this case.

{¶ 36} A guardian of an estate must secure, preserve, and account for the ward's property. *Champa v. New York Cent. Mut. Relief Assn.* (1936), 57 Ohio App. 522, 526, 11 O.O. 319, 320, 15 N.E.2d 172, 174. The rationale behind the appointment of a guardian and the duty to act in the ward's best interest is that an incompetent person cannot properly manage his or her estate. In managing the estate, the guardian must act in the best interest of the ward. R.C. 2111.14(B). Another duty of the probate court is to ascertain and give effect to the intent of the settlor when legally possible. See *Townsend's Exrs. v. Townsend* (1874), 25 Ohio St. 477; *Tootle v. Tootle* (1986), 22 Ohio St.3d 244, 22 OBR 420, 490 N.E.2d 878; *In re Trust of Brooke* (1998), 82 Ohio St.3d 553, 557, 697 N.E.2d 191, 194.

{¶ 37} In this case, the duty of acting in the best interest for the ward and the duty to enforce the settlor's intent have encroached upon each other. The probate court sought to act in the best interest of the ward by ordering Jean Lombardo's guardian to revoke the voting trust. But this act interferes with Jean Lombardo's intention to make the voting trust irrevocable for a ten-year period.

{¶ 38} In 1992, when Jean Lombardo executed the voting trust, she was competent. *L & M Properties Co. v. Lombardo* (Dec. 18, 1996), Cuyahoga C.P. No. 305267, unreported, affirmed in *Lombardo v. Lombardo* (Nov. 25, 1998), Cuyahoga App. No. 72913, unreported, 1998 WL 827583. To vest a probate court with the authority to order a guardian to terminate an irrevocable voting trust that was validly formed by the ward prior to his or her incompetency unjustifiably allows the probate court to substitute its judgment for that of a competent settlor. This is not the guardian's purpose.

{¶ 39} While acting in the best interest of a ward's estate, the guardian must have liberal access to the ward's estate and assets, but that authority should not

encroach upon an instrument *specifically deemed irrevocable* by the ward prior to his or her incompetency. A competent settlor has the right to be secure in the belief that an instrument made irrevocable pursuant to requirements set out in the Revised Code, be they wise or foolish, will not be subject to another person's interpretation of what is in the settlor's best interests. The finality of asset planning made by a competent person should be preserved.

{¶ 40} Thus, as a matter of public policy, we find that a guardian should not be given authority to revoke an irrevocable voting trust because to do so would frustrate the intent of the settlor. See, *e.g., In re Guardianship of Lee* (Apr. 9, 1999), Okla.Civ.App. No. 90,753, unreported, 1999 WL 342727.

D. *Conclusion*

{¶ 41} For all the aforementioned reasons, we hold that, even when acting in the best interest of a ward, a probate court may not authorize a guardian to revoke a valid irrevocable voting trust created pursuant to R.C. 1701.49. Accordingly, we reverse the judgment of the court of appeals.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and WISE, JJ., concur.

JOHN W. WISE, J., of the Fifth Appellate District, sitting for COOK, J.

————————————